The COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

Richard P. MINETTE, Respondent.

No. 88–144.

Supreme Court of Iowa.

June 15, 1988.

James E. Gritzner of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C. and Norman G. Bastemeyer, Des Moines, for complainant.

Richard P. Minette, Clear Lake, pro se.

---

PER CURIAM.

The Grievance Commission of this court found that the respondent, Richard P. Minette, had violated several rules of professional conduct by neglecting four probate matters and by failing to cooperate with the ethics committee in its ensuing investigation. The commission recommended that the respondent be reprimanded. On our review, we suspend his license for a minimum of three months.

## I. *The Probate Matters.*

Four probate matters are involved; two were decedents' estates and two were conservatorships for minors. In one of the decedents' estates, the respondent failed to properly defend against a claim filed by a creditor. The administrator threatened to sue the respondent, but the suit was avoided by the respondent's paying $200 toward the claim and waiving his attorney fees.

The second estate problem arose out of the respondent's repeated failure to respond to delinquency notices sent to him by the clerk of the district court. *See* Iowa Code § 633.32(1985); Iowa R.Prob.P. 5.

The two remaining probate matters included a conservatorship to handle a small trust and a conservatorship opened for a minor for school purposes. The respondent also received notices of delinquency in these conservatorship cases but did not cure the delinquencies within the required time.

These probate problems on the part of the respondent are deemed to be admitted as a result of his failure to respond to the committee's requests for admissions, *see* Iowa R.Civ.P. 127, and by his testimony at the commission hearing.

We agree with the commission that the respondent's handling of the probate matters violated several of our ethics rules. Specifically, he has violated DR 1–102(A)(1) (violation of disciplinary rule); DR 1–102(A)(5) (conduct prejudicial to administration of justice); DR 6–101(A)(3) (neglecting a legal matter); EC 6–1 (failure to act with competence and proper care); EC 6–4 (failure to adequately prepare for and give appropriate attention to legal work).

## II. *Failure to Cooperate with Committee.*

When the ethics committee of the bar association attempted to resolve the respondent's problems in the probate cases, it was met with a total lack of response by him. Following receipt of a complaint, the committee notified the respondent by certified mail and asked him to reply. *See* R. of P.Comm. on Prof. Ethics & Conduct of the Iowa State Bar Ass'n 3.2. No response was forthcoming. The committee then sent a second notice, under committee rule 3.3, which required a response within ten days. There was still no reply. The respondent admitted his failure to respond to the committee inquiries but testified that it was the result of a mental block, an inability to face the reality of the situation, and not a case of contumacious conduct or defiance of the committee.

Nevertheless, failure of a lawyer to cooperate in an ethics committee investigation is itself a violation of our ethics rules. *See Committee on Professional Ethics & Conduct v. Miller*, 412 N.W.2d 622, 624 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Stienstra*, 390 N.W.2d 135, 137 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Horn*, 379 N.W.2d 6, 9 (Iowa 1985). This brings us to the question of disposition.

## III. *Disposition.*

The commission recommended a reprimand. It appears that the respondent has taken steps to correct his problems. He associated himself with a partner who has apparently helped him in completing his work. He has received psychiatric counseling and has sought the advice of another attorney in coping with his problems. He has also put in place office procedures aimed at eliminating deadline problems. These efforts are commendable.

While we agree with the Grievance Commission that the respondent has taken these steps to prevent future problems, we cannot overlook the fact that he not only neglected the legal matters entrusted to

him but failed to respond to the communications by the ethics committee. The ethics committee, and our Grievance Commission, are made up of busy lawyers and laypeople who should not be required to expend unnecessary time to deal with lawyers who fail to respond to the attempts to investigate complaints. A prompt response on the part of the lawyer could well eliminate a considerable amount of work on the part of everyone.

Although we see some merit in the commission's recommendation for a reprimand, we believe a more serious sanction is more consistent with our recent disciplinary cases of a similar nature. *See, e.g., Committee on Professional Ethics & Conduct v. Rosene*, 412 N.W.2d 634, 637 (Iowa 1987) (failure to close two estates and failure to cooperate; three-month suspension); *Miller*, 412 N.W.2d at 624 (neglect in two estates and failure to respond to committee inquiries; three-month suspension); *Committee on Professional Ethics & Conduct v. Paulos*, 410 N.W.2d 260, 262 (Iowa 1987) (failure to complete four probate matters, coupled with failure to respond to committee inquiry; six-month suspension).

We conclude that respondent's violations warrant an indefinite suspension of his license to practice law. This suspension shall be with no possibility of reinstatement for three months from the date of this opinion. This suspension shall apply to all facets of the practice of law, Iowa Sup.Ct. R. 118.12, and any application for reinstatement shall be governed by rule 118.13.

Costs are taxed to the respondent pursuant to Iowa Supreme Court Rule 118.22.

LICENSE SUSPENDED.

All Justices concur except SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ., who dissent.

SCHULTZ, J. (dissenting).

The majority presents itself with the difficult task of deciding whether to reprimand respondent or suspend his license. In choosing an appropriate sanction we generally consider what is necessary to protect the public and deter other lawyers from repeating the same or similar misconduct. In this case, I am not convinced that a reprimand would serve as a sufficient deterrent to other lawyers. Nor am I satisfied that a reprimand would prevent a reoccurrence of the same conduct by the respondent. On the other hand, I do not believe that the severe penalty of suspension is necessary to protect the public under the peculiar circumstances of this case. Respondent's conduct did not result in substantial harm to his clients and the record shows that he has faced up to his problem and taken affirmative steps to deal with it. I conclude that we need a middle ground between these two sanctions.

First, let us examine the severity of the sanction of suspension. When a lawyer's license is suspended, even for a short period, an extreme penalty is extracted. First, the lawyer suffers financially. The self-employed lawyer is not on a salary and cannot turn his income on and off like a water spigot. It takes time and effort to effect a steady income in a law practice. The requirement that a lawyer dispose of all files and cases and turn his clients over to another lawyer negates the previous time and effort of building up a law practice. It often takes months or years for a suspended lawyer to return to his pre-suspension income. The financial consequences continue long past the period of suspension.

Suspension also impairs a lawyer's credibility and seriously damages the confidence of current and prospective clients. To properly function as a professional, a lawyer must have the respect and confidence of his clients. Suspension erodes the professional relationship between lawyer and client which impairs the lawyer's effectiveness.

I recognize that the consequences of suspension should not and cannot cause us to avoid our responsibility to properly sanction lawyers who act unethically. Public concern transcends individual concerns. However, individual concerns require us to carefully choose the proper sanctions.

In contrast to the seriousness of suspension, a reprimand is a relatively mild sanc-

tion. Although it is a degrading experience for a professional, the financial consequences are not nearly as great. When conduct is punished by reprimand our voice of disapproval is not as loud. The deterrent effect is less as reprimands are easier to forget than suspensions.

Given the disparity of seriousness between these two sanctions, it should not be surprising that we are faced with situations where neither one is appropriate. The present case is one of those situations. Unlike the majority I do not believe we are obligated to apply one of our traditional sanctions when neither is appropriate to the facts of the case. I would fashion a sanction that is more appropriate to the seriousness of the offenses involved. Because my conclusion that an intermediate sanction is needed depends on the facts of the case, I find it necessary to discuss the pertinent details which led to the complaints against the respondent in somewhat greater detail than did the majority opinion.

Respondent's initial problems arose from his failure to properly handle four probate matters. The first matter concerned respondent's representation of the administrator of an estate. A claim was filed in the estate for an unpaid judgment of six hundred dollars against decedent. Respondent advised the administrator to disallow the claim and subsequently filed a disallowance. A hearing was scheduled on the disallowance and respondent appeared without his client. Although he argued that the estate property was held in joint tenancy and was not subject to the claim, respondent presented little or no evidence to support his argument and the court directed that the claim be paid.

Respondent admitted that he did not accept this defeat well and did not communicate with his client concerning it. Two months later, the court entered an order directing that the claim be paid with interest and that the estate be closed the following month. Approximately four months later the clerk of court filed a notice of delinquency. The district court entered an order directing the respondent and his client to appear in court to show cause why

they should not be sanctioned for failing to comply with the court's order. The client sought the assistance of another attorney who appeared at the show-cause hearing, assisted her in paying the claim, and closed the estate. Following a threat of suit, respondent settled with the administrator for $200 and waived his fees for handling the estate.

The second probate matter concerned another estate. In that case, the clerk of court had filed a notice of delinquency in filing the inventory. When no action to cure was taken, the clerk reported the delinquency under the provisions of Iowa Code section 633.32 and Iowa Rule of Probate Procedure 5. Respondent still did not act to cure the delinquency in the estate. Respondent indicates that the estate was left open so that the administrator could transfer vehicle titles to a third party and that the matter had been turned over to his present law partner.

The third and fourth matters involved conservatorships for two separate minors. One was opened to handle a small trust and the other was opened for school purposes and to receive a social security benefit that did not materialize. In both of these matters the respondent was served with delinquency notices but did not respond to them. Apparently, there was no financial loss to either fiduciary from respondent's delay.

In the last three matters referred to, the committee notified respondent of the complaints by restricted certified letter and having received no response, mailed a second notice. R. of P.Comm. on Prof.Ethics & Conduct 3.2, 3.3. Rule 3.2 requires a written response and rule 3.3 provides that a failure to respond may serve as the basis for a complaint.

Respondent appeared before the grievance commission and was forthright in his testimony and answers. This was contrary to his actions in response to delinquency notices and ethics complaints. He is forty years old and has practiced law in Clear Lake, Iowa for fourteen years. Respondent was with a law firm for three years and then practiced alone until the time of the complaint. He described his practice as

a general practice involving little civil litigation. Respondent indicated that about ten percent of his work was probate practice and that he was handling five to seven probate matters at the time of the hearing. In addition to his law practice, he has other business interests and has been involved in community affairs.

Respondent testified that he had taken in too much business and had tried to do too many things, including extensive pro bono work. He admitted that he did not have a tickler system in his office or any other recordkeeping device to aid him in meeting deadlines. Respondent indicated that he preferred the type of law business that involved face-to-face contact and lasted for a short time. He maintained that his failure to respond to the delinquency notices and to the committee's letters was not done with malice or intent to harm anyone. Respondent frankly admitted that he avoided opening restricted certified mail.

Respondent has taken steps to correct the deficiencies that led to this hearing. He has recently taken in a partner who has helped him greatly by sharing his work. He followed the suggestion of the committee's counsel and sought counseling from a psychiatrist and is continuing those sessions. Respondent also sought the advice of another attorney and followed his suggestions. He now has staff to open most of his mail and place it on his desk with the appropriate file. Most importantly, he admitted that he needed help and publicly thanked the counsel for the committee for the advice to seek counseling. Respondent apparently impressed the commission with his candor and progress.

Respondent's conduct obviously suggests that he suffers from some type of problem. I will not attempt to diagnose these problems but merely discuss the symptoms. His conduct shows that he did not respond to deadlines in probate, did not communicate with a client following an unexpected and adverse ruling, and stonewalled the ethics committee until near the end of the proceedings. Such conduct is self destructive and is difficult to completely understand. However, I do not believe that such conduct is uncommon among professional persons faced with daily stress.

While respondent has taken action to prevent a reoccurrence, I am troubled by responses he made to members of the grievance commission at the hearing. Respondent related that he had not divulged the specific nature of his disciplinary hearing to his law partner and had not informed his spouse and family of the hearing. This concession indicates that respondent, at the time of the hearing, still did not appropriately handle unpleasant matters.

My review of the facts convinces me that suspension of respondent's license would be inappropriate. First, we have no assurance that this sanction will improve his performance when his license is restored. Nor do I believe that it would have any measurable effect on other lawyers who procrastinate and have difficulty facing up to unpleasant problems. The immediate result of a suspension would be to impose a severe financial hardship on the respondent and force his present clients to seek other counsel. A reprimand would also be inappropriate, however, as it would tend to understate the seriousness of the problem.

This case is well suited for a remedy that we have not previously utilized. I believe that respondent should be allowed to continue practicing law. However, his progress in dealing with the problems that caused this action must be monitored. Although we are not equipped to handle the extensive duties of a parole officer, I believe that we can protect the public and insure the integrity of our system by imposing a suspension that would be stayed if respondent adheres to conditions which would require only slight supervision. I would order a suspension of respondent's license but stay it for a period of two years subject to the following conditions:

(1) Within fifteen days from the filing of this opinion, respondent shall file with this court an election that he agrees to comply with the conditions of this order and seeks a stay of suspension.

(2) He shall not engage in any further probate practice during this two-year period without associating another licensed at-

torney who must be shown on the designation of attorney filed with the clerk of court. This designated attorney may be his law partner.

(3) Respondent shall secure from the clerk of court in Cerro Gordo County, a statement on or before both July 15 and January 15 of each year, which must be mailed within ten days to the counsel for the ethics committee. Such statement must certify that he has associated other counsel on each probate matter and that such files contain no probate delinquencies. A similar statement shall be obtained from the clerk of court of any other county wherein respondent represents a fiduciary in a pending probate file.

(4) Within fifteen days from the filing date of this opinion respondent shall certify by a sworn statement, mailed to the counsel of the ethics committee, that he has established in his office a tickler system, or other recordkeeping device or docket-control system, which will insure that he will be notified when filing deadlines are reached.

(5) He shall continue counseling with his present physician until he is discharged by such physician or will secure other adequate counseling.

(6) He shall refrain from any other violation of the provisions of the Code of Professional Responsibility.

(7) Respondent shall pay the costs of this proceeding pursuant to Iowa Supreme Court Rule 118.22 in the amount of $413.54.

At the end of the two years I would withdraw the suspension if respondent has met these conditions.

In summary, I am convinced that a reprimand alone is inadequate. Furthermore, I conclude that a suspension would merely punish the respondent and not serve the public interest. Finally, the relatively simple terms provided in the suggested conditions would insure that respondent's activities would be monitored to some degree and would either improve respondent's ability to serve his clients or in the event of failure would remove him from the practice of law.