COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

Richard P. MINETTE, Respondent.

No. 93–58.

Supreme Court of Iowa.

April 21, 1993.

Eric P. Sloter, Norman G. Bastemeyer, and Charles L. Harrington, Des Moines, for complainant.

Roger J. Kuhle, Des Moines, for respondent.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO, and ANDREASEN, JJ.

HARRIS, Justice.

Six ethical violations are urged in this lawyer disciplinary proceeding. The grievance commission found each violation had been established and recommended a license suspension. On review we agree with the findings but conclude the license must be revoked.

Respondent Richard P. Minette was admitted to practice in 1973. He was publicly reprimanded in July 1986 because of delinquency in probate matters. In *Committee on Professional Ethics and Conduct v. Minette*, 424 N.W.2d 459 (Iowa 1988), we suspended Minette's license for not less than three months for further probate delinquencies, as well as for failing to cooperate with the ethics committee's investigation. Minette never applied for reinstatement and remains under suspension.

The six violations now alleged stem mostly from Minette's representation of Paul D. Hanson. That relationship resulted in a $468,888 judgment in Hanson's favor against Minette. *See Hanson v. Minette*, 461 N.W.2d 592, 593 (Iowa 1990). The judgment attests that Minette became an instrument and tool for Hanson's dissipation of a vast fortune. Of course Minette need not answer for Hanson's dissolute extravagance; the six matters alleged here go far beyond a lawyer's negligent failure to protect a spendthrift client.

Minette became socially acquainted with Paul Hanson in the mid to late 1960s. Eventually Minette became Hanson's business advisor, attorney, attorney-in-fact, and cotrustee of a trust established for Hanson's benefit. The trust was funded by about 842,120 shares of common stock in Winnebago Industries, Inc.; the total assets amounted to nearly $40,000,000. Hanson also received an investment account funded by a $1,000,000 cash gift to him from his father. Minette was authorized to write checks on Hanson's bank account and to approve the sale of stock from the trust when greater funds were needed to pay Hanson's expenses. When the relationship ended in early 1983, Hanson had dissipated all the trust funds. He later filed for bank-

ruptcy. The bankruptcy trustee filed the civil suit affirmed in *Hanson v. Minette,* previously mentioned.

Minette, as Hanson's friend and attorney-in-fact, was well aware of Hanson's lavish spending, his inattention to personal business and his alcoholism. Minette received Hanson's mail, received monies, endorsed checks, drew checks on Hanson's accounts, and generally attended to nearly all of Hanson's business and many personal matters.

I. The first violation stems from Minette's failure to file Hanson's federal and state income tax returns for the years 1978 through 1982. Minette had previously assisted Hanson in tax matters and knew, or should have known, that Hanson relied on him to file the returns. He knew that no one else was filing them. Minette had received copies of the fiduciary returns previously filed for Hanson and also had the records necessary to prepare and file his current returns. The failure to file the returns resulted in the assessment of back taxes, penalty and interest.

II. Minette acted as attorney-in-fact for Hanson in Hanson's purchase of rental property from an enterprise known as S.O.T.I. Corporation. Minette was an investor, officer and director of S.O.T.I., and in a position to make a profit from the sale. Without disclosing his interest to Hanson and without obtaining Hanson's informed consent, Minette acted for both buyer and seller in the transaction.

III. Minette was on friendly terms with a David M. Parks and undertook to obtain a $2000 loan from Hanson to Parks. The money was transferred by a check signed by Minette. Hanson was not acquainted with Parks and had no reason to make the loan. It is disputed whether the loan was repaid, a dispute not decided by the commission. The commission did find, and we agree, that an ethical violation nevertheless occurred in that there was no informed consent by Hanson and Minette's conduct constituted a conflict of interest.

IV. Minette, acting under his power of attorney, wrote himself a check in the amount of $9000 on Hanson's account.

These funds were used to settle a professional negligence claim against Minette that was then being pressed by another client. No collateral or security of any type was given for the note and no written documentation of the transaction appeared other than a note dated March 20, 1983. It was produced shortly before Minette was discharged by Hanson. Minette claims Hanson knew and approved the loan, a claim Hanson denies. Like the commission, we think this dispute also need not be resolved in this proceeding. At the time, Minette was aware of Hanson's conduct and lavish spending habits, his inattention to personal business, and problems with alcohol. Despite this knowledge he obtained no written consent for the loan from Hanson. We conclude that the loan was made without Hanson's informed consent.

V. In 1978 and 1979 Minette paid himself $350 per month from Hanson's funds as compensation for looking after personal and business matters. It is clear that from 1980 to 1983 Minette provided increased assistance in a number of business ventures, several of which necessitated taking trips. In January of 1980 Minette began collecting a monthly retainer of $2500. By the end of 1982 he had paid himself a total of $88,548.

Although Minette claims Hanson authorized the increase from $350 to $2500 per month, Hanson denies it. Minette presented no written fee agreement in support of his claim that Hanson agreed. Minette provided no written itemizations, nor did he show the work performed, its nature, the responsibility he assumed or the customary charges for similar services. The commission found the increased fees were paid without Hanson's agreement.

Under all the circumstances we think it makes little or no difference whether Hanson did or did not privately indicate his assent. Minette was aware of Hanson's demonstrated unwillingness or inability to care for his own interests. It was Minette's role in the relationship to assume that responsibility. It was because of that role that Minette acquired his position of trust and obtained ready access to the

funds. We agree with the commission that the increase in fees was unauthorized.

VI. One violation in the proceeding fell outside Minette's relationship with Hanson. In 1985 Minette undertook to represent Marjorie Johnson for injuries she received in a two-car automobile accident. There were two potential defendants, the other driver and the owner of the other vehicle. Minette brought suit against neither of them; he sued only the other driver's insurer. The statute of limitations ran. Not surprisingly the action was dismissed.

Minette did not advise his client of his manner of handling the case, nor of the fact that as a result she had lost it and any right to maintain an action against the proper parties. Neither did he inform her to seek the advice of other counsel.

The excuse finally proffered by Minette for this mishandling was that the other driver was in bankruptcy. The committee found that this proffer demonstrated, not only Minette's professional negligence, "but ignorance of the proper procedure which should have been implemented and therefore a general incompetence to handle such a matter." We agree.

It is also noted that, after Ms. Johnson complained to the ethics committee, Minette failed to respond to the committee's certified letters, or even to accept them.

VII. Minette's dealings with the Hanson trust violated a number of professional standards including canon 5 of the Iowa code of professional responsibility for lawyers (lawyers should exercise independent professional judgment on behalf of a client). He also violated DR 5–104(A). *See Committee on Professional Ethics and Conduct v. Mershon,* 316 N.W.2d 895, 900 (Iowa 1982) (lawyer, before entering personal transaction with client, must make full disclosure). His conduct in representing Ms. Johnson violated DR 6–101.

Minette's prior reprimand, prior suspension, and the extent and nature of these violations demand revocation. It is established that Minette transferred funds to himself without proper documentation of permission. Except in extraordinary circumstances this calls for revocation.

Costs should be taxed to Minette pursuant to Iowa supreme court rule 118.22.

**LICENSE REVOKED.**