**The COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION,** Complainant,

v.

**Kirk FOUDREE, Respondent.**

No. 91–1020.

Supreme Court of Iowa.

Nov. 20, 1991.

---

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

James Beery, Norwalk, for respondent.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and SNELL, JJ.

SNELL, Justice.

We are reviewing this attorney disciplinary proceeding before the grievance commission, de novo, pursuant to Iowa Supreme Court Rule 118.10 to determine if we agree with the commission's findings and recommendation. We concur and suspend the license to practice law of Kirk Foudree indefinitely with no possibility of reinstatement for a period of one year from the date of this opinion.

The Committee on Professional Ethics & Conduct filed a complaint in three counts with the commission against Foudree. Counts one and two concern alleged unprofessional conduct in the representation of clients. Count three alleged unprofessional conduct in failing to respond to the committee's notices to Foudree of filed complaints. The commission found violations of our Code of Professional Responsibility for Lawyers as follows:

Relating to count one: EC 1–5, DR 102(A)(1), DR 1–102(A)(6), EC 2–33, EC 6–1, EC 6–4, DR 6–101(A)(3), EC 9–1, 9–2, 9–6.

Relating to count two: DR 9–102(B)(3).

Relating to count three: EC 1–4, EC 1–5, DR 1–102(A)(1), (5), and (6).

The EC violations were of canons of ethical considerations; the DR violations were of disciplinary rules.

Count one involved Foudree's representation of Frank Sloan, owner and principal operator of Hawkeye Wood Shavings, Inc. This company was involved in trucking operations including hauling wood shavings. As the operation expanded, other products were hauled such as salt and commodities from various states. The workers' compensation insurance coverage was changed. A hearing officer in the Iowa Insurance Department determined that Hawkeye Wood Shavings, Inc. had a deficiency in workers' compensation premiums owed of approximately $37,000. This was reduced by the insurance department to $17,451.04 but was not paid by Hawkeye, which claimed that the computation was still inaccurate. In an attempt to collect this sum from Hawkeye, the Workmens' Compensation Self–Insurance Group of Iowa Small Business Employers commenced suit in Polk County District Court. At this point, respondent, Foudree, began his representation for Frank Sloan and Hawkeye Wood Shavings, Inc. He filed an answer and pleaded affirmative defenses to the complaint. On January 27, 1987, the district court granted a summary judgment for $17,451.04 against Hawkeye Wood Shavings, Inc., but scheduled a trial on the affirmative defenses or the counterclaims claimed as an offset against the judgment. The case was set for trial on July 31, 1987, but plaintiff's counsel with the knowledge of Foudree filed a motion for continuance. This motion was not resisted by Foudree, and an order was entered on July 31, 1987, setting the case for trial on December 21, 1987, at 9:00 a.m. at the Polk County Courthouse. Foudree testified that he did not receive a copy of this order. He also testified that he did not check the file or contact the clerk to see if the case had ever been reset for trial. It is undisputed that the client, Frank Sloan, repeatedly asked Foudree about the status of the case and when it would be tried. Foudree told him he did not know. There is evidence that Frank

Sloan obtained information that the trial would be held in the fall of 1987, but he did not so inform Foudree.

On the date of trial, December 21, 1987, plaintiff's attorney appeared but neither Foudree nor the defendants, Frank Sloan and Hawkeye Wood Shavings, Inc., appeared. The counterclaims were dismissed and judgment was entered for the plaintiff. Defendants, Frank Sloan and Hawkeye Wood Shavings, Inc., first knew of the outcome of the case when their bank account was garnished in order to satisfy the judgment. Foudree admitted that he did not discuss the case with the judge or file posttrial motions on the basis that he had received no notice of the trial. On February 10, 1988, Foudree tried to effect an appeal by filing notice of appeal with the Supreme Court of Iowa rather than with the clerk of the district court as required by Iowa Rule of Appellate Procedure 6. On February 22, 1988, Foudree's services were terminated by a letter from Frank Sloan. The supreme court ultimately dismissed the appeal because no appendix was ever designated. Foudree testified that his error on the notice of appeal was due to his lack of knowledge of appellate procedures. The defendants, Frank Sloan and Hawkeye Wood Shavings, Inc., lost all remedies that might have been available and ultimately paid the judgment.

The record shows that Hawkeye Wood Shavings, Inc. paid $600 to Foudree for his legal services. After the appeal was dismissed, Foudree and his client settled a malpractice claim for $1000. Foudree executed a promissory note for that amount in favor of his client. The note remains unpaid.

Sloan testified that it was extremely difficult to contact Foudree because he maintained no office and Sloan had to locate Foudree at his home or contact him through Foudree's father. Foudree admitted that he did not have an office after April 1986 and instead used an answering service, which he contacted every other day. Foudree testified that he maintained no files on the case, that all his contacts were oral, that there was no correspondence between himself and the client, Hawkeye Wood Shavings, Inc., and that he had no ledger showing his hours or method of accounting for his legal services.

Count two involves Foudree's client, David Barnhill. Barnhill had received many traffic tickets, which resulted in a summons to appear before a hearing officer for the Iowa Department of Transportation. He paid Foudree $2100 to represent him, which he claimed was to cover court costs, fines and the fees. Barnhill testified that he was assured by Foudree that he would take care of everything and would represent him at the Iowa Department of Transportation hearing. Foudree did not appear at the hearing; Barnhill represented himself and was placed on probation. Foudree testified that he was delayed in court, was unable to get there, and had trouble reaching the hearing officer by telephone. When he did reach him, he briefly discussed the matter and concluded that the result was generally satisfactory. Foudree did nothing further except to caution his client to be careful of what he said. Barnhill testified that he ultimately had to pay most of the tickets that were supposed to be paid by the $2100 retainer. Barnhill was very dissatisfied because he received no accounting or information from the respondent concerning the disposition of the retainer. Barnhill did not ask that his money be returned.

Count three involves the failure of the respondent to reply to the correspondence and documents served upon him by the Iowa State Bar Association Committee on Professional Ethics & Conduct. Foudree made no effort to defend himself on this issue but did appear with his attorney at the hearing and denied various requests for admission, which up to that time had remained unanswered. Foudree presented no substantive defense to count three.

Foudree's explanations for his conduct in handling the legal problems of Frank Sloan and Hawkeye Wood Shavings, Inc. fall into the categories of excuse, ignorance and blaming his client. He steadfastly maintains that his missing the trial date in December 1987 should be excused because he

never got notice. Consistent with this theme is his failure to give the district court notice of this excuse by moving to vacate the judgment. *See* Iowa R.Civ.P. 252 and 253. Instead, he tried to appeal by filing a notice of appeal with the clerk of the Iowa Supreme Court. Jurisdiction was not achieved because the rules specify filing of the notice of appeal with the clerk of the district court. *See* Iowa R.App.P. 6. The purported appeal was dismissed thus ending his client's final opportunity to have the merits of his case heard. Sloan hired another lawyer to save his case, but it was too late. Foudree says he was unfamiliar with appellate procedure. We view this explanation as disingenuous when the procedure is stated in rule six in plain language that a nonlawyer could understand.

Foudree is not a novice in the profession. He was admitted to the Iowa bar in 1979 and has practiced continuously in Iowa. He was in private practice for a couple of months, then worked at the county attorney's office for a year and has been in private practice since then. For several years he associated with different attorneys at three office locations. Thereafter, for two years he officed out of his home without a secretary, depending on an answering service for messages.

Foudree was hired to represent Sloan and Hawkeye on the dispute over workers' compensation premiums in late September or October 1, 1985, sometime after the Iowa State Fair in August. He testified before the commission that he negotiated with Charles Levad who represented Workmens' Compensation Self–Insurance Group of Iowa Small Business Employers' against Sloan and Hawkeye to collect the premiums. Foudree told the commission this ultimately led to a $20,000 reduction in the claim for premiums, a reference to the original assessment of $37,000 reduced to the $17,451.04 judgment which Sloan had to pay. Foudree's lawyer in his brief pronounced this work "outstanding." Significantly omitted from Foudree's testimony was the fact that the claim had already been reduced to $17,451.04 before Foudree was hired by Sloan. On August 23, 1985, the hearing officer for the Iowa Insurance Department filed an eleven-page opinion of findings of fact and conclusions of law which decided the proper classification for the business Hawkeye was conducting for purposes of assessing workers' compensation premiums. This decision ordered Hawkeye to pay the Self–Insurance Group $17,451.04. At this hearing, Hawkeye was represented by a lawyer who was present; Foudree did not represent Sloan or Hawkeye at this hearing and had nothing to do with the outcome. His testimony and his lawyer's claim border on legerdemain.

█ Finally, Foudree argues that the whole problem was his client's fault, whose stubborn failure to inform Foudree of the trial date was "weird behavior." The record shows that Sloan was informed by somebody that the trial was scheduled for December 1987. He was not sure it was December 21. Sloan testified he did not pass along this information to Foudree because he did not feel it was his job. We agree it was not his job and his behavior was not weird. The relationship between a lawyer and client is not a partnership whereby each is responsible for the other's acts and lawyer negligence may be slipped off to the client "partner." Foudree's job was to protect his client by doing the lawyer work his license to practice gave him the right to do. He could have easily learned of the trial date by telephoning or stopping at the clerk's office. Instead, he appears to have adopted the approach that what you do not know will not hurt you. He admits that Sloan repeatedly asked him about a new trial date to which he replied "I haven't heard anything and when I do I'll let you know." Foudree's position was that if they do not ever set a court date that was fine. He said: "The longer it goes the further down the tube the case may fall, and you always hope for maybe a 215 notice. I didn't describe that to Mr. Sloan, but I said, if cases aren't prosecuted timely they can be dismissed." He further stated that he did not believe he had any responsibility to check with the court to see if a new date had been set. We find this concept of representing a client misguided and wrong. The committee has established

by a convincing preponderance of the evidence a pattern of neglect and incompetence in representing these clients. *See Committee on Professional Ethics & Conduct v. Nadler,* 467 N.W.2d 250 (Iowa 1991).

Regarding count two, Foudree did not show up to represent Barnhill at the DOT hearing. He now claims a sterling result in that Barnhill did not lose his driver's license even though he had a bad driving record. Although the result may have been sterling, Foudree gave nothing to its value, since the DOT officer had already decided to put Barnhill on probation before Foudree talked to him on the telephone.

Barnhill gave Foudree $2100 but received no receipt and no explanation of how the money would be applied. No record was produced by Foudree to show an allocation. DR 9–102(B)(3) was violated.

Count three was admitted by Foudree who failed to respond to committee inquiries. *See Committee on Professional Ethics & Conduct v. Stienstra,* 390 N.W.2d 135, 137 (Iowa 1986). His plea is that this failure should be of light consequence since he appeared before the commission to defend himself. We find no mitigation in his doing what he was obliged to do as a lawyer. *Id.*

The violations of our Code of Professional Responsibility in all three counts have been proved. We hereby suspend indefinitely the license to practice law of Kirk Foudree with no possibility of reinstatement for a period of one year from the date of this opinion.

LICENSE SUSPENDED.