IOWA SUPREME COURT BOARD OF
PROFESSIONAL ETHICS AND
CONDUCT, Complainant,

v.

Gordon L. WINKEL, Respondent.

No. 95–1723.

Supreme Court of Iowa.

Jan. 17, 1996.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Gordon L. Winkel, Algona, pro se.

Considered by McGIVERIN, C.J., and CARTER, NEUMAN, SNELL, and TERNUS, JJ.

NEUMAN, Justice.

This attorney disciplinary matter is before us for review pursuant to Iowa Supreme Court rule 118.10. A division of the grievance commission has recommended that we suspend respondent's license for three months based on probate delinquencies. Due to the gross inattention to duty revealed by the record before us, we believe a more severe sanction is warranted. We order a suspension of six months.

Respondent Gordon Winkel, aged sixty-seven, has practiced law in Algona, Iowa, since 1955. Over the years he has shared a general practice with his father, brother, and others; he currently operates as a solo practitioner. Winkel estimates that probate makes up fifty to seventy percent of his practice, with the remainder primarily devoted to income tax and real estate.

The complaint before us concerns Winkel's neglect in fifteen different probate matters. His inaction generated seventy-one delinquency notices certified to the supreme court by the Kossuth County clerk of court pursuant to Iowa Code section 633.32 (1995) and rule 5 of the Iowa Rules of Probate Procedure. Four of the estates—which have been open for fourteen, ten, six, and five years, respectively—account for twenty-eight of the delinquency notices.

In each case Winkel followed essentially the same pattern of procrastination and neglect. Upon receiving a delinquency notice from the clerk he would respond (if at all) by obtaining an order to keep the estate open or assure the court he would resolve the matter soon. Further delinquency notices and letters from the Iowa Supreme Court Board of Professional Ethics and Conduct (hereinafter "board") would inevitably result.

Winkel's dilatory conduct eventually led to the present complaint filed by the board in July 1995. The complaint charged Winkel with violating DR 6–101(A)(1) (handling matter lawyer not competent to handle), DR 6–101(A)(3) (neglect of client's legal matter), DR 1–102(A)(5) (conduct prejudicial to administration of justice), and DR 1–102(A)(6) (conduct adversely reflecting on fitness to practice law). The board served Winkel with a notice of the complaint and a request for admissions. Winkel failed to participate in the telephone conference setting the date of the grievance commission hearing but later agreed to the date chosen. Four days before the scheduled hearing, Winkel filed a motion to continue, citing his unfamiliarity with grievance commission rules that require an answer within fifteen days, and requesting additional time to file an answer, respond to the request for admissions, and prepare for the hearing. The motion was denied.

At the hearing, Winkel did not dispute the board's evidence regarding his habitual procrastination and neglect. He conceded a careless attitude and admitted that he should have found time to resolve the matters more promptly. Although he admitted there was no excuse for his inaction, he attributed some of the delays to special or "tricky" aspects of the cases. Winkel was apologetic and expressed a sincere desire to change his ways. He admitted that in the past he had relied solely on the "squeaky wheel" tickler system but advised that a new computerized calendaring system had been implemented at his office. He spoke of progress recently made toward closing some of the estates, and expressed his belief that no client had ever been harmed by his procrastination.

Although the grievance commission gave Winkel due credit for his honesty and forthrightness, it also stated that

it is apparent that Respondent's practice will not change at this stage of his career, computer-aided or not. This is not a case of Respondent's lack of knowledge or expertise in probate matters. Probate has

become the main area of his practice, and it will likely continue as such.

The commission found Winkel was not incompetent to handle probate matters, but it did hold that the board had met its burden of proof in showing violations of DR 6–101(A)(3), DR 1–102(A)(5), and DR 1–102(A)(6). Furthermore, the commission found that Winkel has a "problem in facing reality," noting that "[i]t is questionable whether any disciplinary action will remedy this condition." The commission recommended the suspension of Winkel's license to practice law for three months and further recommended that reinstatement be conditioned on Winkel satisfying all currently outstanding probate delinquencies and instituting a calendar system to meet probate filing deadlines.

■■■■ I. In attorney disciplinary proceedings, this court reviews the facts and the commission's recommendation de novo. *Iowa Supreme Ct. Bd. of Professional Ethics & Conduct v. Sather*, 534 N.W.2d 428, 430 (Iowa 1995). We give respectful consideration to the findings and recommendations of the commission, but are not bound by them. *Id.*

■■■■ The burden of proof rests on the board to prove by a convincing preponderance of the evidence that Winkel committed the conduct alleged in the complaint, thereby violating the code of professional responsibility as charged. *Id.* "This burden does not require proof beyond a reasonable doubt, but lies somewhere between the proof required in criminal cases and that required in civil cases." *Committee on Professional Ethics & Conduct v. Garretson*, 515 N.W.2d 25, 27 (Iowa 1994). In meeting this burden, "[t]he commission may rely on matters in a request for admissions ... if the respondent does not deny or otherwise object to them." *Sather*, 534 N.W.2d at 430.

■■■■ II. A review of this record leaves no doubt that the board has met its burden of proof. A convincing preponderance of the evidence establishes that Winkel neglected his legal responsibilities in probate administration and failed to respond to notices of the district court and inquiries of the board.

The record discloses no evidence of any response by Winkel to any notice or inquiry of any kind. Winkel did not dispute the evidence introduced by the board concerning the delinquent matters, nor did he offer any explanation other than his own carelessness and procrastination.

■■■■ It is well established that "a lawyer's dilatoriness in the handling of a probate matter will be met by disciplinary sanction." *Committee on Professional Ethics & Conduct v. Eldon J. Winkel*, 415 N.W.2d 601, 602 (Iowa 1987) (listing citations). "Prolonged inattention to probate matters undermines the public's confidence in the legal profession and is contrary to the ... canons of professional responsibility." *Committee on Professional Ethics & Conduct v. Haney*, 435 N.W.2d 742, 743 (Iowa 1989). An attorney bears the responsibility "to comply with statutory or court-ordered deadlines for the taking of necessary actions in estates." *Sather*, 534 N.W.2d at 430–31. Thus, the fact that no clients have complained is *not* a mitigating factor. *Committee on Professional Ethics & Conduct v. Hall*, 463 N.W.2d 30, 36 (Iowa 1990).

■■■■ Repeated failure to respond to committee inquiries constitutes a separate ethical violation. *Committee on Professional Ethics & Conduct v. Minette*, 424 N.W.2d 459, 460 (Iowa 1988). In past cases we have reasoned that the board and the grievance commission

> are made up of busy lawyers and laypeople who should not be required to expend unnecessary time to deal with lawyers who fail to respond to the attempts to investigate complaints. A prompt response on the part of the lawyer could well eliminate a considerable amount of work on the part of everyone.

*Id.* at 461.

■■■■ The discipline appropriate in a given case turns on "the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the attorney's fitness to continue in the practice of law." *Committee on Professional Ethics & Conduct v. Blomker*, 379 N.W.2d 19, 21 (Iowa 1985). The commission's recommendation of a three-

month suspension is more in keeping with discipline recently imposed by this court in less egregious cases. *See, e.g., Committee on Professional Ethics & Conduct v. Morris,* 523 N.W.2d 753, 754 (Iowa 1994) (three-month suspension for neglect of guardianship and estate and failure to cooperate in committee's investigation); *Haney,* 435 N.W.2d at 743–44 (three-month suspension for neglect of *two* probate matters and failure to respond to numerous inquiries by court and committee); *Minette,* 424 N.W.2d at 460–61 (three-month suspension for neglect of *four* probate matters and failure to cooperate with committee investigation); *Committee on Professional Ethics & Conduct v. Rosene,* 412 N.W.2d 634, 634–35 (Iowa 1987) (three-month suspension for neglect of *two* probate matters and failure to cooperate with committee's investigation); *Committee on Professional Ethics & Conduct v. Miller,* 412 N.W.2d 622, 623 (Iowa 1987) (three-month suspension for neglect of *two* estates and refusal to respond to inquiries of committee). At a minimum, Winkel's extensive record of delinquencies demands a sanction more consistent with the following cases: *Committee on Professional Ethics & Conduct v. Havercamp,* 442 N.W.2d 67, 69 (Iowa 1989) (six-month suspension for neglect in handling estate, delay in prosecuting collection lawsuit, and failure to respond to complaints on both matters); *Committee on Professional Ethics & Conduct v. Paulos,* 410 N.W.2d 260, 260–62 (Iowa 1987) (six-month suspension for neglect of four probate matters, two of which remained opened longer than ten years, and failure to respond to notices from court and committee); *Committee on Professional Ethics & Conduct v. Johnson,* 404 N.W.2d 184, 185–86 (Iowa 1987) (six-month suspension for negligence and delays on two estates which resulted in tax penalties for attorney's unexcused failure to file tax returns and failure to respond to committee notices); *Committee on Professional Ethics & Conduct v. Batschelet,* 402 N.W.2d 429, 430 (Iowa 1987) (six-month suspension for neglect of twenty estates, one of which generated eighteen delinquency notices).

We hereby suspend Gordon Winkel's license to practice law in this state indefinitely, with no possibility of reinstatement for six months. This suspension applies to all facets of the practice of law. *See* Iowa Sup.Ct.R. 118.12.

Upon any application for reinstatement, Winkel must establish that he has not practiced law during the suspension period and that he has in all other ways complied with the requirements of Iowa Supreme Court Rule 118.18. In addition, Winkel must furnish satisfactory proof of a plan to handle all future probate matters expediently or show that he has engaged other qualified probate counsel to assist him.

The chief judge of the third judicial district, or his designee, is hereby directed to superintend the prompt resolution of the fifteen delinquent probate matters involved in this proceeding, either following transfer of the matters to other counsel, or in accordance with the provisions of Iowa Code section 633.32(3).

Costs of this action shall be taxed to the respondent pursuant to Iowa Supreme Court Rule 118.22.

**LICENSE SUSPENDED.**