**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Philip B. MEARS, Respondent.**

No. 97–774.

Supreme Court of Iowa.

Sept. 17, 1997.

David J. Grace, Des Moines, for complainant.

Philip B. Mears, Iowa City, pro se.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and SNELL, JJ.

McGIVERIN, Chief Justice.

This attorney disciplinary proceeding involves respondent Philip B. Mears' handling of two prisoner relief cases. A division of our Grievance Commission (Commission) found that Mears' conduct violated the Iowa Code of Professional Responsibility for Lawyers (Code) and recommended that he be publicly reprimanded. We agree with the Commission's findings and recommendation.

I. *Background facts and proceedings.* Philip B. Mears, an attorney licensed to practice law in Iowa, maintains an office in Iowa City and employs several attorney associates and staff. Since 1986 or 1987 he has specialized in prisoner relief cases, including postconviction relief and civil rights actions. The present complaint against Mears arose out of his conduct in connection with two such prisoner cases.

A. On May 27, 1994, the Iowa district court for Jones County appointed Mears to investigate a request for postconviction relief by Iowa Men's Reformatory inmate Raymond Freie, Jr., determine whether an application for postconviction relief should be filed, and report back to the court within thirty days. Freie had been convicted of murder in 1982 in the Iowa district court for Hancock County. He already had unsuccessful appeals from his conviction and a first postconviction relief action.

After visiting Freie on August 19 at the reformatory in Anamosa, Mears wrote to him on August 23 and advised him that he had no grounds for postconviction relief in Jones County; however, Mears offered to review the paperwork from Freie's prior appeals to determine whether his present postconviction claims could be raised in Hancock County, the county of Freie's conviction. Inmate Freie sent the extensive appeals materials to Mears along with a letter explaining the grounds Freie alleged for postconviction relief. Despite a March 1995 letter to Mears from a Jones County district court judge requesting a response to the court within three weeks, Mears did not file the report, as directed by the district court, until November 17, 1995. In addition, he did not review Freie's paperwork or respond to numerous letters from Freie seeking information about the status of his case. In October 1995 Freie filed a complaint regarding Mears with the Iowa Supreme Court Board of Professional Ethics and Conduct (Board).

B. On July 22, 1994, Mears was appointed by the district court for Jones County to represent another Iowa Men's Reformatory inmate, Tony Youngblood, in a postconviction relief action concerning a prison disciplinary matter. At the time he initially requested assistance with the postconviction relief action, Youngblood had not filed in district court a financial affidavit, stating his inability to pay filing fees and costs, which ordinarily tolls the statute of limitations on filing actions. *See* Iowa Code § 610.1 (1993). Mears failed to discover that omission after he was appointed to represent Youngblood.

Mears did not file the application for postconviction relief on Youngblood's behalf until September 20, 1995, after the limitations period had expired. *See* Iowa Code §§ 822.2(6), 822.3 (ninety-day limitation period on filing prison discipline postconviction relief action). Consequently, any court hearing was delayed and a dispute arose concerning the timeliness of the application for postconviction relief. Both the district court and new counsel, after Mears finally withdrew, had to spend considerable time resolving that issue. Youngblood's postconviction relief action would have been barred if the district court later had not resolved the dispute in his favor. Inmate Youngblood filed a complaint concerning Mears with the Board on July 25, 1995.

C. Based on the complaints by inmates Freie and Youngblood, the Board filed a complaint against Mears with the Commission alleging violations of several provisions of the Iowa Code of Professional Responsibility for Lawyers. *See* Iowa Sup.Ct. R. 118.5. Mears answered the complaint and represented himself at a hearing before a division of the Commission. *See* Iowa Sup.Ct. R. 118.7. In substance, he agreed he had been

dilatory in handling the two matters. While he did not dispute the material allegations of the complaint or attempt to excuse his conduct, Mears described the challenges and frustrations associated with prisoner relief work. He noted that the work load is often overwhelming, the success rate and compensation are low, and the clients can be difficult to deal with. In addition, Mears pointed out that during the time periods in question, his office had been inadequately staffed because of employee turnover. According to Mears, that situation made it difficult "doing much of anything other than putting out fires."

Although the Commission recognized the difficulties cited by Mears, it found that he had violated several Code provisions, noted his three prior private admonitions due to dilatory handling of unrelated cases, and recommended that Mears be publicly reprimanded. *See* Iowa Sup.Ct. R. 118.9. Mears did not appeal.

■ II. *Proof burden and standard of review.* The Board bears the burden of establishing by a convincing preponderance of the evidence that respondent Mears has committed the Code violations as alleged. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gilliam,* 560 N.W.2d 1, 3 (Iowa 1997); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sikma,* 533 N.W.2d 532, 535 (Iowa 1995).

■ No appeal was taken from the Commission's recommendation and our task is to review de novo the record made before the Commission, determine the matter, and impose any appropriate discipline. *See* Iowa Sup.Ct. R. 118.10. Such discipline can be a lesser or greater sanction than that recommended by the Commission. *Id.*

■ III. *Violations of the Code.* The Commission concluded that Mears' conduct violated several provisions of the Code. It determined that because of the dilatory manner in which he handled the Freie and Youngblood cases, Mears in each of the cases violated DR 1–102(A)(5) (lawyer shall not engage in conduct that is prejudicial to the administration of justice); DR 1–102(A)(6) (lawyer shall not engage in conduct adversely reflecting on fitness to practice law); and DR

6–101(A)(3) (lawyer shall not neglect a client's legal matter).

Upon our de novo review of the record in this case, we conclude that a convincing preponderance of the evidence supports the Commission's findings and conclusions concerning Mears' violations of the Code. The evidence, which is not disputed by Mears, shows that he did not attend to his responsibilities to Freie and Youngblood within a reasonable period of time. As the court-appointed attorney for these individuals, Mears should have fulfilled his duties and responded to the district court's instructions in a timely manner.

■ IV. *Discipline.* Our conclusions regarding Mears' violations of the Code bring us to the matter of sanctions. In determining the appropriate discipline for ethical misconduct by an attorney, we consider both aggravating and mitigating circumstances. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mattson,* 558 N.W.2d 193, 195 (Iowa 1997); *Committee on Prof'l Ethics & Conduct v. Wenger,* 469 N.W.2d 678, 680 (Iowa 1991).

We note, as did the Commission, that Mears' conduct did not involve dishonesty or result in ultimate harm to a client. However, the Youngblood postconviction relief action was almost dismissed due to Mears' neglect. In addition, Mears has indicated that he is taking measures to avoid similar delays in the future. We are convinced that because of the work he has chosen, Mears performs a valuable service for prisoners and faces unique challenges.

■ Nevertheless, we have frequently stated that the pressures of a busy law practice do not excuse ethical violations. *Committee on Prof'l Ethics & Conduct v. Boysen,* 480 N.W.2d 26, 27 (Iowa 1992). Furthermore, Mears previously has been admonished by the Board three times for undue delays in connection with representation of clients. In 1984 Mears was admonished regarding his careless office practice and negligence in the representation of a non-prisoner in a civil matter. Two admonitions were given in 1995. One was for Mears' failure to communicate with a prisoner client for over three

years despite a significant development in the case. Another involved Mears' failure to respond to a client's request in a timely manner. We consider that prior record in fixing the appropriate discipline. *See Committee on Prof'l Ethics & Conduct v. Kelly*, 357 N.W.2d 315, 319 (Iowa 1984).

Concerning the appropriate discipline, the Commission stated:

[H]ad Respondent's neglect and failure to respond to the court and to numerous client letters [been] in civil cases such as dissolution or probate matters, we have no doubt that more severe discipline than a private admonition would have resulted. The fact that the work and the clients are difficult does not excuse inaction and failure to report. In addition, the panel is not convinced that the caseload reduction measures Respondent has implemented, without more, are sufficient to avoid a repetition of the problem. The conduct complained of does not warrant suspension because it did not involve dishonesty and did not result in harm to a client, although his neglect in the Youngblood matter caused additional work for opposing counsel and the court. Balancing all of the considerations, on a close question we recommend a public reprimand rather than a private admonition.

We conclude, as did the Commission, that the Code violations in this case and respondent's prior disciplinary record concerning neglect of client matters warrant a public reprimand. Accordingly, we so reprimand respondent Mears.

Costs are taxed to Mears pursuant to Iowa supreme court rule 118.22.

**ATTORNEY REPRIMANDED.**