## IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS & CONDUCT, Complainant,

v.

## Charles R. KELLY, Jr., Respondent.

### No. 98–31.

Supreme Court of Iowa.

April 22, 1998.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Terry D. Parsons of Olsen & Parsons, Cedar Falls, for respondent.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and ANDREASEN, JJ.

HARRIS, Justice.

The legal profession at large is often blamed for the dilatory practices of a few lawyers. There have always been reports of busy but disorganized lawyers who take on a task, leave it undone, and cover up their omission by inventing artful excuses. Although such habits are by no means confined to our profession, a measure of the criticism leveled at us is justified. The present lawyer discipline proceeding is almost a classic example.

In July or August of 1994 Charles R. Kelly, Jr., a Postville, Iowa, attorney, undertook to represent Linda Toedter in seeking a modification of her dissolution of marriage decree. Linda hoped to secure reduction of child support obligations owed to her former husband, Randy Toedter. Kelly did not file a petition for modification until October 31, 1994. He says the delay was because he first attempted to consult with Marion Beatty, Randy's attorney, in the hope of resolving the matter more economically and expeditiously.

Even after Kelly filed the tardy application for modification, the matter languished. Kelly testified he consulted at various times with attorney Beatty about the case. Although Kelly contends otherwise, upon our de novo review of the record we are convinced, as was the grievance commission, that with a single exception the alleged consultations did not occur. Repeated consultations were nevertheless reported to Linda as cover for Kelly's inattention to the case.

In times past a claim such as Linda's might have remained in indefinite limbo. Under modern practice though, courts take charge of case processing so Linda's application was reached in its regular order and was set for a trial scheduling conference. Kelly acknowledges it was his responsibility to conduct the trial scheduling conference the court had set for April 17, 1995, at 9 a.m. Although once again Kelly contends otherwise, it is clear he also ignored this responsibility. His testimony regarding a number of telephone busy signals is unconvincing. His report to Linda of a computer breakdown in the office of the court administrator was disproved.

Linda, who had been advised the trial scheduling conference had been set, understandably became agitated when she inquired only to learn it too had been neglected. Linda eventually took her complaints to our court's board of professional ethics and conduct. Kelly had the temerity to persist in his contentions regarding Linda's matter. He reiterated his story, including the nonexistent consultations, to the board, and, after the board filed a complaint, to the grievance commission.

This case is uncomplicated and, happily, not as common as it would have been a generation ago. No profession or calling is immune from members who undertake responsibilities they later become unable or unwilling to discharge. Often in such situations the neglect precipitates a coverup of the "check's in the mail" variety. The "white lie" then evolves into a whole course of imagined performance. When the story inevitably collapses the result ranges from embarrassment all the way to professional disgrace. This discredited conduct never made sense. Any casual observer could not help discerning that more effort was usually expended in the coverup than would have been required to punctually attend to the professional responsibility.

The public, which is obviously ill served by such conduct, can take heart. Modern business records and all that comes with the computer age increasingly render coverup attempts impossible. The fact that the truth will soon be known should discourage the habit of inattention to professional responsibilities.

Kelly's neglect of the legal matter entrusted to him violated DR 6–101(A)(3). We believe the commission's recommendation of a public reprimand is appropriate and it is so ordered. Costs are taxed to Kelly. *See* Ct. R. 118.22.

**ATTORNEY REPRIMANDED.**