**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Robert W. THOMPSON, Respondent.**

**No. 98–2115.**

Supreme Court of Iowa.

June 3, 1999.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

.Roger J. Kuhle of Roger J. Kuhle, P.C., West Des Moines, for respondent.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and CADY, JJ.

LAVORATO, Justice.

In this lawyer disciplinary proceeding, the grievance commission found that Robert Thompson's convictions of two simple misdemeanors—assault and criminal trespass—violated Iowa Code of Professional Responsibility DR 1–102(A)(6) (lawyer shall not engage in conduct adversely reflecting on the fitness to practice law). Additionally, the commission found that Thompson neglected a client's postconvic-

tion relief action in violation of DR 6–101(A)(3) (lawyer shall not neglect a client's legal matter). The commission recommended a thirty-day suspension. Thompson appealed from the commission's findings and recommendations as allowed by Court Rule 118.11, but later dismissed the appeal. Thompson, however, did file a statement with the court, asking that we impose only a reprimand.

Upon our de novo review, *see* Court Rule 118.10, we agree with the commission that Thompson was guilty of these ethical violations. However, we are convinced that under the circumstances we should suspend Thompson's license to practice law indefinitely, with no possibility of reinstatement for two months from the date of this opinion. *See id.* ("Upon such review de novo the court may impose a lesser or greater sanction than the discipline recommended by the grievance commission.").

Thompson has practiced law in Reinbeck, Iowa, since 1972. His practice is primarily in the area of criminal defense. He also handles some personal injury cases. The balance of his practice is devoted to probate, tax, and real estate.

On October 1, 1996, Thompson went to the home of Josh Tremmel where he confronted Tremmel and Tremmel's mother. At the time, Tremmel was seeing Thompson's teenage daughter in violation of a domestic abuse no-contact order. Thompson had sought the order because of Tremmel's abusive conduct toward Thompson's daughter. Not surprisingly, Thompson was highly upset with Tremmel. Thompson drove Tremmel back to Thompson's home where Thompson displayed and threatened Tremmel with a loaded shotgun.

As a result of this incident, Thompson was charged with, and ultimately found guilty of, simple assault and criminal trespass. The criminal assault related to the shotgun incident at Thompson's home. The criminal trespass resulted from Thompson's refusal to leave Tremmel's home after Tremmel's mother ordered Thompson to leave.

On August 19, 1996, the district court appointed Thompson to represent Michael Holmes on an appeal of a postconviction relief decision. On October 29, 1996, we notified Thompson that he was in default, fined him fifty dollars, and advised him that unless he remedied the default within fifteen days, we would dismiss the appeal. Contrary to our order, Thompson did not cure the default. In December 1996, we dismissed the appeal for want of prosecution. Thompson never told Holmes of the dismissal.

At the time of the postconviction and criminal matters, Thompson was undergoing treatment for depression and abuse of alcohol. He was also on prescription drugs for the depression.

At the disciplinary hearing, Thompson presented testimony from law enforcement officers, practicing attorneys, and district court judges. All testified that Thompson was a gifted and skilled trial lawyer, as well as being an honest and trustworthy person. Additionally, Thompson's treating psychiatrist testified about Thompson's past problems with depression and alcohol. The psychiatrist noted that medication was controlling Thompson's depression and recommended that Thompson abstain from any use of alcohol. Nevertheless, Thompson admitted at the hearing that he continues to use alcohol but denied abusing it.

In his testimony, Thompson readily admitted committing the criminal offenses and neglecting Holmes' legal matter. The commission found that Thompson's actions that led to the criminal convictions constituted conduct adversely reflecting on his fitness to practice law in violation of DR 1–102(A)(6). The commission also found that Thompson neglected Holmes' legal matter in violation of DR 6–101(A)(3).

In his filed statement to us, Thompson takes issue with the commission's finding that his actions concerning the October 6 incident constituted conduct adversely re-

flecting on his fitness to practice law. Thompson sees his actions as those of a concerned father and not those of a lawyer. He thinks the public would view his actions not as a knowing and willful criminal violation but as an emotional response to a problem of long-standing. The public, he says, would look upon our failure to distinguish personal matters from conduct that might subject a lawyer to discipline as an inability to "exercise common sense judgment." This failure, he predicts, would actually lessen public confidence in the system. Finally, given his alcohol and depression problems, Thompson argues it was clearly understandable that he reacted the way he did.

It is true that Thompson's actions toward Tremmel did not arise out of any professional relationship between the two. Nevertheless, we have made it very clear that lawyers do not shed their professional responsibilities in their personal lives. *Committee on Prof'l Ethics & Conduct v. Millen*, 357 N.W.2d 313, 315 (Iowa 1984). Thus, "[i]t makes no difference that [a lawyer] was not acting as a lawyer at the time of [the lawyer's] misconduct." *Id.* We have imposed discipline for criminal violations not even remotely related to the practice of law. *See, e.g., Committee on Prof'l Ethics & Conduct v. Patterson*, 369 N.W.2d 798, 801 (Iowa 1985) (lawyer disciplined for assault on unresisting female).

Moreover, we disagree with Thompson's public perception argument for as we said in *Patterson:* "[W]hen those licensed to operate the law's machinery knowingly violate essential criminal statutes, there inexorably follows an intensified loss of lay persons' respect for the law." *Id.*; *see also Committee on Prof'l Ethics & Conduct v. Tompkins*, 415 N.W.2d 620, 624 (Iowa 1987) ("We might ask ourselves how the public can have confidence in our system of justice if we overlook or minimize *knowing* and *willful* criminal conduct....").

As lawyers we take an oath to uphold the law. When, as lawyers, we violate criminal statutes, we violate that oath. We suspect the public is acutely aware of these facts and as a result expects more of us than it does of the average citizen. *See* EC 1–5 ("Because of a lawyer's position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude."). Thus, because of such violations we bring dishonor not only upon ourselves but upon our profession as well.

■ Given Thompson's experience in the criminal defense field, he can hardly say he was unaware he was violating the criminal laws and thus violating his oath as a lawyer. As for Thompson's depression and alcoholic conditions, we do not recognize such problems as an excuse for unethical conduct. *See Committee on Prof'l Ethics & Conduct v. Wenger*, 469 N.W.2d 678, 681 (Iowa 1991). We agree with the commission that Thompson's criminal convictions reflected adversely on his fitness to practice law in violation of DR 1–102(A)(6).

To his credit, Thompson readily acknowledges neglecting Holmes' case and failing to advise him of the appeal dismissal. Like the commission, we conclude Thompson's neglect violated DR 6–101(A)(3).

■ We are left then with determining what would be an appropriate sanction. Certain well-accepted principles guide that determination. Although we are not bound by the commission's recommendations, we give respectful consideration to those recommendations. *Committee on Prof'l Ethics & Conduct v. Leed*, 477 N.W.2d 390, 392 (Iowa 1991). Besides considering the lawyer's fitness to practice law, we give serious consideration to protecting the public and deterring others from similar conduct. *Committee on Prof'l Ethics & Conduct v. Kaufman*, 515 N.W.2d 28, 30 (Iowa 1994). Uppermost in

our minds is the public's trust in our resolve to maintain the ethics of the profession. *Leed*, 477 N.W.2d at 392.

Thompson seizes upon the following commission language to support his argument that he deserves nothing more than an admonition for the criminal convictions:

The commission has considered mitigating circumstances which gave rise to [Thompson's] conduct and does not disagree with the testimony of [Thompson's] witnesses that so long as [Thompson] continues to treat his depression and not abuse alcohol that he is a competent, ethical attorney. The commission feels that the conduct involving the October 6, 1996 incident which resulted in his conviction in the simple misdemeanors of assault and criminal trespass could be handled with a private admonition as the commission feels that this is highly unlikely to reoccur. The commission does express concern that a loaded gun was involved and that [Thompson] has not followed his doctor's advice in regard to use of alcohol.

We have a different slant on the October 6 incident. We can certainly understand Thompson's anger and frustration when, contrary to a no-contact order, Tremmel attempted to renew an abusive relationship with Thompson's daughter. Such anger, however, was all the more reason for Thompson to exercise restraint and not take the law into his own hands. Thompson admitted he had been drinking when he confronted Tremmel and his mother. Because of the circumstances, serious injury or even death could have resulted from this explosive situation. As a criminal defense attorney, he better than most people should have been aware of this danger. These facts amount to aggravating rather than mitigating circumstances. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gilliam*, 560 N.W.2d 1, 3 (Iowa 1997) (holding that we consider both aggravating and mitigating circumstances in fixing the appropriate discipline for attorney misconduct).

In *Tompkins*, a county attorney illegally entered residences searching for women's garments for sexual gratification. We similarly considered such dangerous activities as an aggravating circumstance:

Whatever sanction we deem appropriate, we must not overlook the serious nature of Tompkins' conduct, which bears directly on his fitness to practice law.... By his own admission, Tompkins stealthily entered over one hundred residences, in many instances while he was serving as county attorney. He attempted to rationalize his actions by suggesting to himself, at the time, that he was not hurting anyone. What he was ignoring, however, was the possibility that serious injury or death could have resulted from the surprise and trauma of his illegal entries into people's homes. As a county attorney he should have been acutely aware that even family members have been killed or seriously injured because they were mistaken for burglars.

*Tompkins*, 415 N.W.2d at 623.

In past cases involving criminal assault, we have meted out sanctions ranging from three months to fourteen months. *See Committee on Prof'l Ethics & Conduct v. Lapointe*, 415 N.W.2d 617, 620 (Iowa 1987) (fourteen-month suspension imposed for convictions of assault and tampering with a witness); *Patterson*, 369 N.W.2d at 801 (three-month suspension imposed for assault conviction); *Committee on Prof'l Ethics & Conduct v. Wilson*, 270 N.W.2d 613, 616 (Iowa 1978) (six-month suspension imposed for assault). We are convinced that at the very least a thirty-day suspension is warranted for the criminal convictions.

But for two previous reprimands for two similar neglect matters, the commission would have given serious thought to only a reprimand on the neglect violation involving Holmes' appeal. The commission, however, felt that the two previous reprimands did not accomplish the ultimate

goal of deterrence and restoration of public confidence. For that reason, the commission recommended a thirty-day suspension. In his statement to us, Thompson urges only a reprimand for this violation.

■ We, as well as the commission, may consider previous public reprimands in determining an attorney's fitness to practice law in this state. *See* Ct.R. 118.7. The commission was therefore well within its authority to consider the two previous reprimands in recommending a thirty-day suspension for the neglect violation. Like the commission, we think a thirty-day suspension for the neglect violation is necessary to accomplish the goals of deterrence, restoration of public confidence, and protection of the public. *See Committee on Prof'l Ethics & Conduct v. Rogers,* 313 N.W.2d 535, 537 (Iowa 1981) (noting that courts have employed various sanctions for a lawyer's neglect of duty including disbarment, suspension, and reprimand).

■ We therefore suspend Thompson's license to practice law in this state indefinitely, with no possibility of reinstatement for two months from the date of this opinion. In imposing this sanction, we have taken into consideration the depression and emotional pressures under which Thompson was laboring at the time. *See Wenger,* 469 N.W.2d at 681 (holding that although we do not consider emotional problems and stress as an excuse for unethical conduct, we do consider such problems when determining an appropriate sanction). We think the sanction is stringent enough to underscore the seriousness of Thompson's conduct and to reflect our continuing resolve to the public that we will maintain the ethics of our profession. Any longer period of suspension, we believe, would be more punitive than protective.

This suspension applies to all facets of the practice of law. *See* Ct.R. 118.12. Costs of the proceedings are assessed to Thompson pursuant to Court Rule 118.22. Upon application for reinstatement,

Thompson shall have the burden to prove that he has not practiced law during the period of suspension, that he meets the requirements of Court Rule 118.13, and that he has paid the costs we have assessed.

**LICENSE SUSPENDED.**