603 N.W.2d 600 (1999)
IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,
v.
Richard FREEMAN a/k/a Dick Freeman, Respondent.
No. 99-1349.
Supreme Court of Iowa.
December 22, 1999.
Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.
Robert A. Wright, Jr., Des Moines, for respondent.
Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.
TERNUS, Justice.
The Iowa Supreme Court Board of Professional Ethics and Conduct filed a complaint against the respondent, Richard Freeman, alleging that he had violated several provisions of the Iowa Code of Professional Responsibility by neglecting legal matters entrusted to him, by failing to withdraw from representation and return *601 files upon the request of his client, and by failing to respond to inquiries from the Board. The Grievance Commission found that the Board had proved the alleged violations and recommended that Freeman be publicly reprimanded. Our review is required by Court Rule 118.10.
We find, as did the Grievance Commission, that the Board proved the alleged ethical violations by a convincing preponderance of the evidence. See generally Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mayer, 570 N.W.2d 647, 648 (Iowa 1997) (holding the standard of proof in a disciplinary proceeding is a convincing preponderance of the evidence); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hughes, 557 N.W.2d 890, 892 (Iowa 1996) (stating supreme court's review in disciplinary cases is de novo). We disagree, however, with the recommended discipline. Based on the seriousness of Freeman's neglect of a client's discrimination claim, resulting in the expiration of the statute of limitations prior to suit being filed, we believe a three-month suspension is warranted.

I. Factual Findings.

Freeman was admitted to the practice of law in Iowa in 1979, although most of his career has been spent in government employment in our nation's capital. In 1996 Freeman returned to Iowa to care for his mother, and at that time leased space from a Des Moines law firm. His disciplinary troubles arose during the time he was engaged in the private practice of law in Iowa.
A. The Hodges matter. In December 1996 Freeman undertook the representation of William Hodges in connection with a discrimination claim. The statute of limitations on Hodges' state claims had run before Freeman was retained; the statute of limitations on Hodges' federal claims was about to expire. Freeman was not admitted to practice in the federal court for the northern district of Iowa, where the lawsuit was to be filed. Despite the urgent circumstances, Freeman did not make the necessary arrangements to be admitted in a timely manner; and as a result, the statute of limitations ran on his client's federal claims before he could file suit.
B. The Gibbs estate. In January 1997 James Gibbs contacted Freeman to represent him in connection with the estate of Gibbs' mother. (Gibbs had grown up in the same neighborhood as Freeman's sons.) Although Freeman agreed to handle the estate, he did not perform the necessary work. At least two delinquency notices were sent to Freeman, but he still failed to complete the tasks required to probate the estate.
Gibbs, who was aware of the delinquency notices, attempted to contact Freeman, but was consistently told that he was unavailable. Freeman did not return Gibbs' phone calls. Eventually, Gibbs wrote to Freeman, asking Freeman to forward the "entire case file, along with withdrawal papers." Again, Freeman failed to respond. At the time of the hearing, in July 1999, Freeman had not yet returned Gibbs' file nor had he withdrawn from his representation of the estate.
C. The Gibbs guardianship/conservatorship. Gibbs had a younger brother who was subject to a conservatorship and guardianship. When Gibbs hired Freeman to handle his mother's estate, he also asked Freeman to do the legal work required in the guardianship/conservatorship. As with the estate matter, Freeman did not perform the necessary work, despite receiving two delinquency notices from the clerk of court.
D. Failure to cooperate with the Board. The Board notified Freeman on several occasions that complaints had been filed against him in connection with the Hodges and Gibbs matters. Freeman was asked to respond, but did not do so. Freeman also failed to respond to the Board's request for admissions. He did, at one time, contact the Board by phone and indicate *602 he would provide a response, but he failed to follow through on this representation.

II. Ethical Violations.

Freeman freely admitted at the hearing in this matter that the factual allegations made against him were true and that his actions violated the rules of professional responsibility. Indeed, these violations were established by Freeman's failure to respond to the request for admissions that addressed the factual foundation for the alleged violations, as well as the unethical nature of Freeman's conduct. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Allen, 586 N.W.2d 383, 387 (Iowa 1998). Because Freeman's conduct is relevant to a determination of the appropriate discipline, however, we briefly review the ethical violations he committed.
Freeman's neglect of his clients' legal matters violated Disciplinary Rule [hereinafter DR] 6-101(A)(3) ("A lawyer shall not... [n]eglect a client's legal matter."). See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein, 586 N.W.2d 523, 526 (Iowa 1998); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Winkel, 542 N.W.2d 252, 254 (Iowa 1996). This same conduct also violated DR 1-102(A)(5) ("A lawyer shall not ... [e]ngage in conduct that is prejudicial to the administration of justice."), and DR 1-102(A)(6) ("A lawyer shall not ... [e]ngage in any other conduct that adversely reflects on the fitness to practice law."). See Winkel, 542 N.W.2d at 254.
Freeman's failure to return his client's file upon his client's request violated DR 2-110(A)(2) (requiring delivery to client of all papers and property to which the client is entitled upon withdrawal from employment). See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Plumb, 589 N.W.2d 746, 748 (Iowa 1999). DR 2-110(B)(4) was also violated when Freeman failed to withdraw from the Gibbs estate upon his client's request. See Iowa Code of Professional Responsibility DR 2-110(B)(4) (requiring that a lawyer withdraw from employment when "[t]he lawyer is discharged by the client"); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sprole, 596 N.W.2d 64, 65 (Iowa 1999).
The final ethical violation that occurred is based on Freeman's failure to respond to the Board's inquiries. This conduct violated DR 1-102(A)(5) and (6). See Winkel, 542 N.W.2d at 254. We note that Freeman's appearance at the disciplinary hearing did not mitigate his failure to cooperate in the Board's investigation. See Committee on Prof'l Ethics & Conduct v. Foudree, 477 N.W.2d 384, 388 (Iowa 1991).
We turn now to the more difficult questionthe appropriate discipline.

III. Discipline.

Freeman asked the Commission to consider his prior unblemished record of public service and the unusual circumstances surrounding his ethical violations in assessing the need for discipline. It is true that Freeman had no disciplinary record prior to the events giving rise to this proceeding. In addition, he had a long record of successful government employment, as well as substantial community involvement. When he returned to Iowa, his life changed. In a short period of time, Freeman's mother died, as well as his uncle and a favorite aunt. Freeman married during this period, later discovering that his new wife had a gambling problem. They were shortly divorced. As a result of these events, Freeman suffered from depression and was treated by a psychologist. He testified that he recognized he had failed his clients and that he should respond to the Board's inquiries, but he was unable to face up to and deal with these embarrassing situations. To his credit, Freeman stated at the hearing that these circumstances did not excuse his conduct, but he offered them merely to show that his unethical actions during this time period were out of character for him.
*603 The appropriate discipline in a particular case turns on "the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the [bar] as a whole, and the respondent's fitness to continue in the practice of law." Committee on Prof'l Ethics & Conduct v. Havercamp, 442 N.W.2d 67, 69 (Iowa 1989). In addition, "we consider both aggravating and mitigating circumstances." Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mears, 569 N.W.2d 132, 134 (Iowa 1997). Finally, we also weigh the Commission's recommendation, although we are not bound by it. See Hughes, 557 N.W.2d at 892.
Because discipline is not based solely on the nature of the ethical violations, violations similar to those committed by Freeman have warranted discipline ranging from a public reprimand to a six-month suspension. Compare Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kelly, 577 N.W.2d 648, 649 (Iowa 1998) (public reprimand for neglect of modification action); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Erbes, 573 N.W.2d 269, 271 (Iowa 1998) (public reprimand for neglect of legal matter and failure to cooperate with Board); Mears, 569 N.W.2d at 135 (public reprimand for neglect of two postconviction relief matters; attorney had received three prior admonitions); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Scheetz, 568 N.W.2d 663, 665 (Iowa 1997) (public reprimand for two instances of client neglect and failure to cooperate with Board); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Parker, 558 N.W.2d 183, 186 (Iowa 1997) (public reprimand for neglect of two estate matters and attempt to disrupt the disciplinary process); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sather, 534 N.W.2d 428, 431 (Iowa 1995) (public reprimand for neglect of one estate and failure to cooperate with Board), and Committee on Prof'l Ethics & Conduct v. Pracht, 505 N.W.2d 196, 199 (Iowa 1993) (public reprimand for neglect of four estate matters and failure to cooperate with the committee), with Sprole, 596 N.W.2d at 66 (two-month suspension for neglect of two civil matters; attorney had previously been admonished on two occasions and reprimanded twice); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Thompson, 595 N.W.2d 132, 136 (Iowa 1999) (two-month suspension for neglect of postconviction relief action and misdemeanor conviction of assault and criminal trespass); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hovda, 578 N.W.2d 673, 675 (Iowa 1998) (two-month suspension for neglect of eighteen probate matters, resulting in eighty-two delinquency notices), and Committee on Prof'l Ethics & Conduct v. Humphrey, 529 N.W.2d 255, 259 (Iowa 1995) (two-month suspension for neglect of three probate matters and one postconviction relief matter and failure to cooperate with committee), with Committee on Prof'l Ethics & Conduct v. Morris, 523 N.W.2d 753, 754 (Iowa 1994) (three-month suspension for neglect of two probate matters and failure to cooperate with committee; attorney had received a prior reprimand for similar conduct); Committee on Prof'l Ethics & Conduct v. Gill, 479 N.W.2d 303, 307 (Iowa 1991) (three-month suspension for neglect of one civil appeal, resulting in dismissal of client's case, and failure to cooperate with the committee; attorney had received a prior reprimand for similar conduct); Committee on Prof'l Ethics & Conduct v. Haney, 435 N.W.2d 742, 743-44 (Iowa 1989) (three-month suspension for neglect of two probate matters and failure to cooperate with committee); Committee on Prof'l Ethics & Conduct v. Minette, 424 N.W.2d 459, 460-61 (Iowa 1988) (three-month suspension for neglect of four probate matters and failure to cooperate with committee), and Committee on Prof'l Ethics & Conduct v. Miller, 412 N.W.2d 622, 623 (Iowa 1987) (three-month suspension for neglect of two estates and failure to cooperate with committee), with Winkel, 542 N.W.2d at 253 (six-month suspension for neglect of fifteen probate matters, resulting in seventy-one delinquency notices, *604 and failure to cooperate with the Board); Havercamp, 442 N.W.2d at 69 (six-month suspension for neglect of one estate, neglect of civil suit resulting in dismissal, and failure to cooperate with committee); Committee on Prof'l Ethics & Conduct v. Oleson, 422 N.W.2d 176, 177 (Iowa 1988) (six-month suspension for neglect of two civil matters, resulting in a default and a dismissal, and failure to cooperate with the committee); Committee on Prof'l Ethics & Conduct v. Paulos, 410 N.W.2d 260, 260-62 (Iowa 1987) (six-month suspension for neglect of four probate matters, two of which remained open longer than ten years, and failure to cooperate with committee); Committee on Prof'l Ethics & Conduct v. Johnson, 404 N.W.2d 184, 185-86 (Iowa 1987) (six-month suspension for neglect of two estates, resulting in estates' substantial liability for tax penalties, and failure to cooperate with committee), and Committee on Prof'l Ethics & Conduct v. Batschelet, 402 N.W.2d 429, 430 (Iowa 1987) (six-month suspension for neglect of twenty estates, one of which generated eighteen delinquency notices). As we recently noted in considering the range of possible discipline in such cases, "the distinction between the punishment imposed depends upon the existence of multiple instances of neglect, past disciplinary problems, and other companion violations, including uncooperativeness in the disciplinary investigation." Sprole, 596 N.W.2d at 66.
Any personal circumstances that may have contributed to the attorney's unethical conduct do not operate as an excuse. See Thompson, 595 N.W.2d at 134 ("As for Thompson's depression and alcoholic conditions, we do not recognize such problems as an excuse for unethical conduct."); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hansel, 558 N.W.2d 186, 191 (Iowa 1997) ("[W]e have repeatedly held that we will not excuse ethical violations because of an attorney's ill health, emotional problems, personality disorders, or the general stress of a busy law practice."). For example, in some of the cases cited above, the attorney suffered from alcoholism or depression, or was otherwise emotionally unable to respond to the needs of his or her clients. Notwithstanding these explanations, we suspended the attorney's license to practice law when such discipline was otherwise warranted by the circumstances. See, e.g., Thompson, 595 N.W.2d at 134 (attorney suspended for two months when ethical violations occurred during a period of depression and active alcoholism); Humphrey, 529 N.W.2d at 257 (attorney suspended for two months despite explanation that he was experiencing marital difficulties at the time of his unethical conduct); Haney, 435 N.W.2d at 743 (attorney suspended for three months when dilatory conduct stemmed from his alcoholism); Minette, 424 N.W.2d at 460 (attorney suspended for three months when record showed he failed to respond to committee because he had "a mental block," even though he had sought psychiatric counseling); Miller, 412 N.W.2d at 623 (attorney suspended for three months, despite alcoholism during period of violations); Johnson, 404 N.W.2d at 185-86 (attorney suspended for six months although he testified that his neglect was due to "a mental block").
We also note that, in those cases in which a public reprimand was deemed sufficient discipline, the record did not reveal that any client was prejudiced by the attorney's neglect. See, e.g., Kelly, 577 N.W.2d at 649; Erbes, 573 N.W.2d at 270-71; Mears, 569 N.W.2d at 134-35 (noting that attorney's conduct caused no harm to his clients); Scheetz, 568 N.W.2d at 665; Parker, 558 N.W.2d at 186; Sather, 534 N.W.2d at 431 (noting that no prejudice occurred as a result of respondent's mishandling of estate); Pracht, 505 N.W.2d at 199 (noting that none of the respondent's clients sustained any financial loss due to respondent's inaction). On the other hand, when the client was harmed, we have imposed a period of suspension. See, e.g., Gill, 479 N.W.2d at 305 (three-month suspension *605 when neglect resulted in dismissal of client's appeal); Havercamp, 442 N.W.2d at 69-70 (six-month suspension when client's civil suit was dismissed); Oleson, 422 N.W.2d at 177 (six-month suspension when one client was put in a default situation in a child support action and another client's appeal was dismissed); Johnson, 404 N.W.2d at 185-86 (six-month suspension when neglect resulted in estates' substantial liability for tax penalties and interest).
Although we share the Commission's sympathy for Freeman's difficult personal circumstances during the time in question, we cannot agree that a public reprimand is an adequate sanction given the harm Freeman caused to his client in the Hodges matter by allowing the statute of limitations to expire without filing suit. Our interest in deterring such neglect and our interest in maintaining the reputation of the bar requires that a period of suspension be imposed.
Although we have generally suspended attorneys' licenses for six months under similar circumstances, we do not think such an extended period of suspension is necessary here. Freeman's ethical violations occurred during a short and unsuccessful attempt at private practice. Since that time, Freeman has returned to Washington, D.C. to seek the type of employment in which he has enjoyed success in the past. Therefore, we see these events as an isolated period in an otherwise unblemished career, with minimal future risk to the public. Cf. Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Smith, 569 N.W.2d 499, 502 (Iowa 1997) (considering respondent's "long and honorable career," his regret in "having opened himself to professional criticism," and the fact that the incident of unethical conduct appeared to be isolated in deciding upon the appropriate discipline); Scheetz, 568 N.W.2d at 664 (noting "respondent's recognition of his limitations in the private practice field" as evidenced by his subsequent employment in a government position in assessing the need for protection of the public); Committee on Prof'l Ethics & Conduct v. Larsen, 407 N.W.2d 601, 602 (Iowa 1987) (considering the fact that two incidents of neglect were "isolated events inconsistent with respondent's normal method of conducting his law practice" in determining the proper discipline). Accordingly, we think that a three-month suspension is appropriate.

IV. Disposition.

We hereby suspend Richard Freeman's license to practice law in this state indefinitely with no possibility of reinstatement for three months. This suspension applies to all facets of the practice of law. See Ct.R. 118.12.
Upon any application for reinstatement, Freeman must establish that he has not practiced law during the suspension period and that he has in all other ways complied with the requirements of Court Rule 118.18. In addition, Freeman must furnish satisfactory proof that he has withdrawn from the Gibbs matters, as requested by his client, and has returned his client's files. Finally, if Freeman intends to engage in the private practice of law upon any future reinstatement, he shall be required to submit satisfactory evidence that he will put in place, use and maintain office practices that will assist him in performing future work in a timely manner.
Costs of this action shall be taxed to the respondent pursuant to Court Rule 118.22.
LICENSE SUSPENDED.