**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Frank B. ADAMS, Respondent.**

No. 00–1760.

Supreme Court of Iowa.

March 21, 2001.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Frank B. Adams, Mason City, respondent, pro se.

TERNUS, Justice.

The Grievance Commission of the Iowa Supreme Court recommends that the court suspend the license of attorney Frank B. Adams for no less than thirty days based on his multiple violations of the Iowa Code of Professional Responsibility. Although we agree with the Commission's findings with respect to the ethical violations, we believe that Adams' conduct warrants a more severe sanction. Therefore, we suspend Adams' license to practice law for three months.

## I. *Factual Background.*

Adams does not dispute the facts giving rise to this disciplinary action. Adams has practiced law in Iowa since 1991 and at the time of the events giving rise to this matter conducted his practice in Mason City, Iowa.

In March 1999, John and Rebecca Babcock and John's parents, Lloyd and Edna Babcock, employed Adams to file bankruptcy petitions on their behalf. Adams stated that if there were no problems, it would take about two months to obtain a discharge in bankruptcy. The Babcocks completed questionnaires to assist Adams in preparing the bankruptcy petitions and advanced $175 per couple for court costs. Later they signed the petitions prepared by Adams and each couple paid a $600 retainer. Adams deposited the funds paid to him by the Babcocks into his general checking account and not into a trust account as defined in Iowa Code of Professional Responsibility DR 9–102(A).

Although Adams never filed the bankruptcy petitions, he told the Babcocks on several occasions that he had. He misrepresented to them that a meeting of creditors had been scheduled, then told them that it had been cancelled. Similarly, he falsely told the Babcocks that a court hearing had been scheduled, but then informed them that it had been rescheduled. In September 1999, shortly before the second fabricated court date, Adams told Rebecca Babcock that the bankruptcy court did not have their bankruptcies on its docket and that he would find out why. He called back to say that the court had lost their file. Rebecca then called the bankruptcy court herself and found out that the petitions had never been filed.

In addition to these numerous misrepresentations, Adams repeatedly failed to return phone calls from the Babcocks. Moreover, after the Babcocks had signed the petitions and been assured that the petitions had been filed, they told their creditors, falsely as it turned out, that they had filed for bankruptcy.

Upon learning that the bankruptcy petitions had not been filed, John and Rebecca Babcock terminated their relationship with Adams and employed another attorney to handle their bankruptcy. They obtained a discharge within forty-five days. Lloyd and Edna also terminated their relationship with Adams but were so disillusioned with attorneys that, even as of the date of the hearing in this matter, they had not sought advice from another lawyer. Upon the Babcocks' request, Adams refunded their retainers and the court costs they had advanced.

Although the Babcocks requested their file, it was never returned to them. Adams said that he would give them the questionnaires they had completed, but not his notes. But even the questionnaires were not provided to the Babcocks because Adams had lost their file sometime in April or May 1999. Adams did not admit this loss until he responded to a request for production of documents in this disciplinary case.

Adams has suffered from depression for fifteen to twenty years, with the depression being worse in the last three to four years. Although he has sought treatment

for his illness in the past, he did not think it had been successful or helpful. He has neither sought nor received treatment in the last two to three years. He has no present plans to obtain help in dealing with his illness.

## II. *Commission's Findings and Recommendations.*

The Grievance Commission concluded that Adams had violated six disciplinary rules: DR 1–102(A)(1) ("A lawyer shall not [v]iolate a disciplinary rule."); DR 1–102(A)(4) ("A lawyer shall not [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."); DR 2–110(A)(2) ("[A] lawyer shall not withdraw from employment until reasonable steps have been taken to ... deliver[ ] to the client all papers and property to which the client is entitled...."); DR 6–101(A)(3) ("A lawyer shall not [n]eglect a client's legal matter."); DR 7–101(A)(1) ("A lawyer shall not intentionally [f]ail to seek the lawful objectives of a client through reasonably available means permitted by law ...."); and DR 9–102(A) ("All funds of clients paid to a lawyer ... shall be deposited in one or more identifiable interest bearing trust accounts...."). The Commission recommended that Adams' license be suspended for thirty days.

■ Our review is de novo. *See* Ct. R. 118.11; *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Plumb*, 589 N.W.2d 746, 748 (Iowa 1999). The Board must establish the violations by a convincing preponderance of the evidence. *See Plumb*, 589 N.W.2d at 748.

## III. *Ethical Violations.*

■ Upon our de novo review of the record, we agree with the Commission's conclusion that Adams violated the six disciplinary rules noted above. Adams' failure to complete the work he had un-

dertaken for his clients, his multiple misrepresentations to his clients, his failure to deposit advances for court costs and retainers into a trust account, and his failure to return his clients' files as requested provide convincing factual support for this conclusion. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Jay*, 606 N.W.2d 1, 4 (Iowa 2000) (DR 7–101(A)); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Winkel*, 599 N.W.2d 456, 459 (Iowa 1999) (DR 9–102(A)); *Plumb*, 589 N.W.2d at 748 (DR 2–110(A)(2)); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein*, 586 N.W.2d 523, 526 (Iowa 1998) (DR 1–102(A)(4)); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lesyshen*, 585 N.W.2d 281, 285 (Iowa 1998) (DR 6–101(A)(3)). Any personal problems that may have contributed to Adams' conduct do not operate as an excuse for these ethical violations. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Thompson*, 595 N.W.2d 132, 134 (Iowa 1999) ("As for Thompson's depression and alcoholic conditions, we do not recognize such problems as an excuse for unethical conduct."). We now turn to the appropriate discipline.

## IV. *Discipline.*

■ "While we give respectful consideration to the commission's findings and recommendations, we are not bound by them." *Winkel*, 599 N.W.2d at 460. Ultimately, it is the court's duty to decide what discipline is appropriate under the circumstances. *See Lesyshen*, 585 N.W.2d at 283.

■■ "The appropriate discipline in a particular case turns on 'the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the [bar] as a whole, and the respondent's fitness to continue in the practice of law.'" *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Freeman*,

603 N.W.2d 600, 603 (Iowa 1999) (quoting *Comm. on Prof'l Ethics & Conduct v. Havercamp*, 442 N.W.2d 67, 69 (Iowa 1989)). We also consider both aggravating and mitigating circumstances. *See id.*

▮ The genesis of the violations in this case was Adams' neglect of his clients' legal matters, which was compounded by a series of lies to cover up this neglect. These acts and omissions were neither inadvertent nor the result of a good faith error in judgment. *See Comm. on Prof'l Ethics & Conduct v. Rogers*, 313 N.W.2d 535, 536 (Iowa 1981) (stating that "[n]eglect cannot be found if the acts or omissions complained of were inadvertent or the result of an error of judgment made in good faith"). An aggravating circumstance is that the Babcocks were harmed by this conduct in that their discharges in bankruptcy were considerably delayed. *See Freeman*, 603 N.W.2d at 604 (noting that a more serious sanction is required when a client is harmed by the attorney's neglect). In addition to these acts, we must consider Adams' knowing violations of the trust account requirements and his failure to return the Babcocks' property to them, both of which are independent breaches of Adams' ethical obligations.

▮ All told, there is no question that these cumulative violations and their impact warrant a suspension. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Reedy*, 586 N.W.2d 701, 703 (Iowa 1998) (noting that "[a]lthough the various violations standing alone might warrant" a reprimand, "the cumulative impact of the offenses ... warrants suspension"); *see also Lesyshen*, 585 N.W.2d at 288 (noting multiple violations of our disciplinary rules call for enhanced disciplinary sanctions). Moreover, the fact that Adams used misrepresentations and deceit to cover up his neglect warrants a more serious sanction than that recommended by the Commission. *See Stein*, 586 N.W.2d at 526. We

also note an aggravating circumstance: Adams received a reprimand in May 1999 as a result of his neglect of probate matters. *See Lesyshen*, 585 N.W.2d at 288 (holding that court may consider prior violations in imposing sanctions). On the other hand, Adams has admitted his wrongdoing and cooperated in the disciplinary process.

▮ Adams asks us to take into account his "self-imposed" suspension for failing to file his continuing legal education (CLE) certification. He asserts that although he had completed the necessary CLE hours, he did not file the required form because he believed that he should not continue to practice until resolution of the pending disciplinary case. As a result of this failure his license has been suspended since November 2000. We do not consider Adams' current suspension as a mitigating factor that can serve to reduce the discipline otherwise warranted by his misconduct.

In considering all relevant factors, including the need for deterrence and the need to maintain the reputation of the bar, we conclude that Adams should be suspended from the practice of law in this state indefinitely with no possibility of reinstatement for three months. This suspension applies to all facets of the practice of law. *See* Ct. R. 118.12. Upon any application for reinstatement, Adams must establish that he has not practiced law during the suspension period and that he has in all other ways complied with the requirements of Court Rule 118.18. In addition, he must demonstrate his compliance with our CLE requirements. Costs of this action shall be taxed to the respondent pursuant to Court Rule 118.22.

**LICENSE SUSPENDED.**