IOWA SUPREME COURT BOARD OF
PROFESSIONAL ETHICS AND
CONDUCT, Complainant,

v.

Randy J. HOHENADEL, Respondent.

No. 01–0812.

Supreme Court of Iowa.

Oct. 10, 2001.

* Senior Judge assigned by order pursuant to    Iowa Code section 602.9206 (2001).

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

J.E. Tobey, III, Davenport, for respondent.

TERNUS, Justice.

This case comes before the court on the report of a division of the Iowa Supreme Court Grievance Commission. *See* Ct. R. 118.10. The Commission found that the respondent, Randy J. Hohenadel, violated the Iowa Code of Professional Responsibility by neglecting two clients' legal matters and misrepresenting the status of those matters to his clients and the court in order to conceal his actions. The Commission recommends a four-month suspension. The Commission also suggests, with one member dissenting, that three months of the suspension period be suspended and Hohenadel be put on probation for twenty-four months. Upon our respectful consideration of the findings of fact, conclusions of law and recommendation of the Commission, we find the respondent guilty of

the charged ethical violations and suspend his license to practice law indefinitely with no possibility of reinstatement for four months.

I. *Report of the Commission.*

The facts giving rise to this disciplinary action were admitted by Hohenadel. Hohenadel was licensed to practice law in Iowa in 1977. Since then, he has practiced in Davenport, Iowa, primarily in the area of court-appointed criminal defense. Witnesses at the hearing confirmed that prior to the events in question Hohenadel enjoyed a good reputation. He was respected and trusted by the bench and bar.

Unfortunately, approximately four years before the hearing, Hohenadel began drinking at inappropriate times and to excess. This fact did not go unnoticed by the judges and lawyers in his community. Over the last few years, he was urged to seek help from Alcoholics Anonymous and Lawyers Helping Lawyers. Hohenadel did not think he needed help, however. He minimized his drinking problem and thought that he could correct whatever difficulty he had by himself.

A wake-up call came in September of 1999 when Hohenadel was publicly reprimanded for neglect of a client's dental malpractice claim, including misrepresenting to the client that her lawsuit had been filed when, in fact, it had not. Despite this disciplinary sanction, Hohenadel failed to acknowledge his problem. He continued drinking, with disastrous effects on at least two of his clients, Raul Liendo and Alan Reinier.

Hohenadel was appointed to represent Raul Liendo in a criminal matter. Hohenadel filed a notice of appeal from Liendo's criminal conviction and then failed to prosecute the appeal. At the disciplinary hearing, he claimed that the appeal had no merit and that he had so informed his

client. Nonetheless, he admitted that he had not complied with the appellate rules for dismissal of frivolous appeals. *See* Iowa R.App. P. 104. As a result of Hohenadel's failure to take any action in the matter, the appeal was dismissed. Thereafter, Hohenadel did not inform his client of the dismissal. Moreover, when a district court judge inquired into the status of the appeal, Hohenadel told the judge that he was continuing to work on the appeal and simply had to file a brief, even though a notice of default had already been issued. Eventually, Liendo filed a pro se motion to reinstate his appeal, which was granted.

The second matter that brought Hohenadel to the attention of the ethics board concerned a personal injury action that Hohenadel had filed on behalf of Alan Reinier on July 1, 1997. That action was initially dismissed on September 23, 1998 for lack of prosecution. Hohenadel filed an application to reinstate the lawsuit, stating in the application that he had been unable to locate the defendant for service of process. He also stated that he had now found the defendant, this statement being untrue. Reinier's petition was reinstated, but Hohenadel still failed to have the defendant served. He eventually requested a continuance, misrepresenting to a district court judge that he had been unable to locate the defendant despite efforts to do so. The continuance was granted, but once again, Hohenadel did not take advantage of the reprieve. On November 29, 2000, the Reinier case was again dismissed for failure to serve the defendant. During this entire time, Hohenadel concealed from his client the true reason for the delay in his client's case.

In addition to the two cases that are the subject of this proceeding, evidence at the hearing established that in the last few years prior to the hearing Hohenadel had frequently been late to or absent from scheduled matters. There were occasions when judges smelled alcohol on his breath in court or in chambers. Sometimes, judges would not permit Hohenadel to participate in court proceedings because of his condition.

The present proceeding came about, in part, due to the intervention of the judges in Hohenadel's district. The judge who granted the continuance in the Reinier case was skeptical of Hohenadel's statements that he could not find the defendant to effect service. The judge then took it upon himself to locate the defendant, which he did in a very short period of time. This discovery resulted in a meeting between Hohenadel, the chief judge of the district, and two district court judges who had been involved in the Reinier case. At that meeting, Hohenadel was instructed to report what had happened to the ethics board. He did so, leading to the present proceeding.

This action was filed in December 2000. In early March 2001, Hohenadel finally obtained an alcohol evaluation and began treatment. At the time of the hearing in early April 2001, he had been diligently complying with the treatment program for a month.

Witnesses at the hearing testified to Hohenadel's basically good and trustworthy nature, as well as his considerable skills as a criminal defense lawyer. They believed that with the assistance of medical professionals and his peers, Hohenadel could be a productive member of the bar, posing no threat to his clients or the public, so long as he remained sober.

The Commission concluded that Hohenadel's failure to prosecute his clients' cases violated Iowa Code of Professional Responsibility DR 6–101(A)(3) ("A lawyer shall not ... [n]eglect a client's legal matter."), DR 7–101(A) ("A lawyer shall not intentionally ... [f]ail to seek the lawful

objectives of a client through reasonably available means ....”), and DR 1–102(A)(5) (“A lawyer shall not ... [e]ngage in conduct that is prejudicial to the administration of justice.”). In addition, the Commission concluded that his failure to timely and accurately inform his clients of the status of their cases constituted a violation of DR 1–102(A)(4) (“A lawyer shall not ... [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation.”). Finally, Hohenadel was determined to have violated DR 1–102(A)(5) by misrepresenting the status of these matters to various district court judges.

The Commission recommended a four-month suspension. All Commission members but one also recommended that three months of the four-month suspension be suspended and that Hohenadel serve a twenty-four-month probation subject to various conditions. These conditions included, among other items, completion of his treatment program, abstention from the use of alcohol or other mind-altering substances, and direct monitoring by the director of the Iowa Lawyers Assistance Program. It was suggested that the director be required to report any violation of the probation conditions to the Iowa Supreme Court Board of Professional Ethics and Conduct. Any failure of Hohenadel to abide by the terms of his probation would result in immediate imposition of the remaining three-month suspension.

## II.  *Scope of Review.*

■ Our scope of review is well established:

This court reviews an attorney disciplinary proceeding de novo. Although we are not bound by the Commission's findings, we give them weight, particularly when considering the credibility of witnesses. We also respectfully consider the discipline recommended by the Commission, but we are not bound by such recommendations. The burden rests on the Board to prove the alleged disciplinary violations by a “convincing preponderance of the evidence.”

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mulford,* 625 N.W.2d 672, 679 (Iowa 2001) (citations omitted).

## III.  *Ethical Violations.*

Hohenadel, to his credit, has never disputed the relevant facts or that his conduct violated the Iowa Code of Professional Responsibility. We agree with the Commission that Hohenadel violated the ethical provisions cited by the Commission in its report. We turn now to a determination of the appropriate discipline.

## IV.  *Discipline.*

■ In determining the appropriate discipline, we consider “ ‘the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the [bar] as a whole, and the respondent's fitness to continue in the practice of law.’ ” *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Freeman,* 603 N.W.2d 600, 603 (Iowa 1999) (quoting *Comm. on Prof'l Ethics & Conduct v. Havercamp,* 442 N.W.2d 67, 69 (Iowa 1989)). We also take into account “both aggravating and mitigating circumstances.” *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mears,* 569 N.W.2d 132, 134 (Iowa 1997).

■ Of course, there is no standard discipline for a particular type of attorney misconduct. Nonetheless, when neglect of clients' legal matters is the primary infraction, discipline generally ranges from a public reprimand to a six-month suspension. *See Freeman,* 603 N.W.2d at 603. Misrepresentations made to clients, and particularly to the court, warrant a more severe sanction than neglect standing

alone. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams,* 623 N.W.2d 815, 819 (Iowa 2001); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein,* 603 N.W.2d 574, 576 (Iowa 1999). In this regard, we have stated:

> Fundamental honesty is the base line and mandatory requirement to serve in the legal profession. The whole structure of ethical standards is derived from the paramount need for lawyers to be trustworthy. The court system and the public we serve are damaged when our officers play fast and loose with the truth.

*Comm. on Prof'l Ethics & Conduct v. Bauerle,* 460 N.W.2d 452, 453 (Iowa 1990). Given the importance of honesty in our profession, we have stated that misrepresentation by a lawyer "constitutes a grave and serious breach of professional ethics" and generally results "in a lengthy suspension of the license to practice law." *Stein,* 603 N.W.2d at 576.

In addition to considering the nature of Hohenadel's violations, we also focus on the need to protect the public. In this regard, we rely on the testimony of those witnesses who testified to their belief that due to Hohenadel's acknowledgement of his alcoholism and successful commencement of treatment, he would not pose a threat to his clients or the public if allowed to practice law. Although this fact supports a lesser sanction, protection of the public is not our only consideration in imposing discipline. We must also be protective of the reputation of the bar as a whole. When an attorney neglects his clients' matters to the point that his clients are harmed and then makes misrepresentations to the court that serve as the basis for court action, serious discipline is warranted.

We also consider Hohenadel's fitness to practice law. Due to the belated timing of his effort to obtain treatment, the extent of Hohenadel's rehabilitation is unknown. Nonetheless, the record shows he is on the road to recovery. We turn now to the aggravating and mitigating circumstances surrounding Hohenadel's misconduct.

There are two aggravating circumstances present here. One is the fact that Hohenadel's neglect resulted in the dismissal of his clients' cases. Although Liendo was able to have his appeal reinstated, Reinier's personal injury action was not. We have recognized that harm to a client is an aggravating circumstance that warrants a more serious sanction. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Jay,* 606 N.W.2d 1, 4 (Iowa 2000); *Freeman,* 603 N.W.2d at 604.

Secondly, this matter is not Hohenadel's first ethical infraction. As we noted earlier, he was previously reprimanded for neglecting a client's legal matter and then lying to his client to conceal his neglect. Again, this circumstance is an aggravating factor, warranting more severe discipline. *Adams,* 623 N.W.2d at 819; *Jay,* 606 N.W.2d at 4. We also note that the three matters brought to the attention of the disciplinary system do not appear to be isolated instances of unethical conduct. *See generally Freeman,* 603 N.W.2d at 605 (noting that attorney's ethical violations were isolated events "in an otherwise unblemished career"). In this regard, we note the testimony of witnesses who said that during the last few years Hohenadel has failed to appear for court hearings or has arrived smelling of alcohol and has been prevented by the court from participating.

On the other hand, there is also an important mitigating circumstance. Hohenadel's unethical conduct does not appear to reflect a fundamentally dishonest character, but rather is a consequence of his

alcoholism. There was abundant testimony at the hearing that his recent neglect and the ensuing deceit were out of character for him. More importantly, Hohenadel has finally sought treatment for the alcoholism that is the root of his professional problems. His attempts to address his illness appear to be genuine and to reflect a recognition that he can no longer conduct his professional life as he has in the past.

In view of the various pertinent factors and the aggravating and mitigating circumstances, we concur in the recommendation of the Commission that a four-month suspension is appropriate. We decline to suspend any portion of this period for two reasons. First, due to Hohenadel's misrepresentations to the court and the fact that harm resulted to his clients, we find a one-month suspension and a period of probation an insufficient sanction. Second, we continue in our belief that the suggested framework for the probation recommended in this case is ill advised. As we noted in *Committee on Professional Ethics & Conduct v. Barrer*, 495 N.W.2d 756 (Iowa 1993):

> The suggestion that the Iowa State Bar Association Lawyers Helping Lawyers Committee could serve as a supervising agency places that group beyond its scope. That committee performs a commendable service, intervening in cases of substance abuse to encourage impaired attorneys to obtain treatment. Its members are practicing attorneys and judges whose activity is ameliorative, rather than of the supervisory nature of a probation authority.

*Barrer*, 495 N.W.2d at 760. We have the same concerns about using the director of the Iowa Lawyers Assistance Program in a probationary role. The director's efforts are sorely needed to assist lawyers *before* their substance abuse problems reach the stage of an ethical violation. In addition, we think the confidential role served by the director at that stage of an attorney's illness would conflict with using the director as a supervisor and informant for the court when matters reach the point of professional discipline.

In summary, we suspend Hohenadel's license to practice law indefinitely with no possibility of reinstatement for four months. This suspension applies to all facets of the practice of law. Ct. R. 118.12. Upon any application for reinstatement, Hohenadel must establish that he has not practiced law during the suspension period and that he has in all other ways complied with the requirements of Court Rule 118.18. Costs of this action shall be taxed to the respondent pursuant to Court Rule 118.22.

**LICENSE SUSPENDED.**