IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,

v.

Timothy J. RYLAARSDAM, Respondent.

No. 01–0914.

Supreme Court of Iowa.

Nov. 15, 2001.

Norman Bastemeyer and Charles Harrington, Des Moines, for complainant.

Timothy Rylaarsdam, Sioux Center, pro se.

TERNUS, Justice.

The Iowa Supreme Court Grievance Commission has filed a report with this court, finding that the respondent, Timothy J. Rylaarsdam, has violated the Iowa Code of Professional Responsibility for Lawyers. The Commission recommends that Rylaarsdam's license to practice law be suspended for six months. Upon our de novo review, we agree that Rylaarsdam has committed ethical violations. We therefore suspend his license to practice law indefinitely with no possibility of reinstatement for six months.

## I. *Background Facts and Proceedings.*

Rylaarsdam practiced law in Sioux Center, Iowa from June 1991 until August 1999. Initially, he practiced part-time with a Sioux Center law firm and also acted as a part-time assistant county attorney for Sioux County. In January 1999, his position in the county attorney's office became full-time and he remained in that position until August of that year. Since that time he has worked as a computer technician for a computer company.

In 1992 Rylaarsdam undertook the representation of Madonna and Richard Harrington. Mrs. Harrington's brother, Donald Lehrman, had died and Rylaarsdam opened an estate for him, having Mr. and Mrs. Harrington appointed as administrators. The only assets in the estate were a shed owned by Donald and a house he had owned jointly with his brother, Robert.

On or about July 5, 1993, Rylaarsdam prepared a petition to sell the shed and he forged the administrators' signatures to this document. At about the same time, he forged Mrs. Harrington's signature to two forms admitting claims filed in the Donald Lehrman estate. Other than the forged nature of the signatures on these documents, the contents and propriety of the petition and the admissions of claims were not in dispute. Rylaarsdam failed to close the Donald Lehrman estate, although he represented to the Harringtons that he had done so.

In 1996, Madonna Harrington again requested Rylaarsdam's assistance. Her brother, Robert, had died and she wanted help in opening an estate to probate his assets. This time Rylaarsdam did not even open the estate. Instead, he took a blank letter-of-appointment form from the clerk of court's office. Then, without the knowledge or consent of the clerk, he completed the form and embossed the clerk's seal on it. Presenting this document to Mrs. Harrington, Rylaarsdam represented to her that the estate had been opened.

The primary asset owned by Robert was the house he had originally held jointly with his brother, Donald. Although Rylaarsdam prepared some preliminary paperwork to effect a sale of this property, he did not complete the transaction. Rather, the respondent misrepresented the status of the sale to Mrs. Harrington and then, in August 1998, used his personal funds to make payments to Robert's heirs, representing that these funds were proceeds of the sale.

Rylaarsdam did not benefit financially from his wrongdoing. Nor did he receive any fees for his work on the Donald Lehrman estate.

After Rylaarsdam became a full-time assistant county attorney in 1999, one of the attorneys in his former firm reviewed the Harrington files. This review eventually led to discovery of the delinquent nature of the Donald Lehrman estate and the forged letters of appointment in the Robert Lehrman estate.

Rylaarsdam's conduct was reported to the Ethics Board. Initially, he failed to respond to the Board's inquiries. He did, however, cooperate after formal charges were filed.

Rylaarsdam did not contest the charges brought by the Board. He admitted his ethical misconduct and acknowledged the necessity of a sanction. He was also sincerely remorseful for what he had done. At the hearing he offered no excuses, but he did try to explain what had led to his unprofessional conduct with a tale that is all too familiar.

Rylaarsdam's problems began when he agreed to handle the Harringtons' estate matters, an area he knew little about and in which he had no experience. Com-

pounding the difficulties inherent in such a situation was Rylaarsdam's reluctance to ask for help from the other attorneys in his firm. Although he initially tried to compensate by reading the applicable statutes and treatises in the area, he found it harder and harder to motivate himself to work on the file. Complicating the matter even further were difficulties Rylaarsdam had in meeting with his clients. Mrs. Harrington was having medical problems during this time and, when she was available, Rylaarsdam would usually have to travel to Sioux City, where the Harringtons were employed, in order to meet with them.

In 1994 Rylaarsdam and his wife began to experience marital problems. One of the problems in their relationship from his wife's point of view was the amount of time Rylaarsdam spent at the office. Consequently, Rylaarsdam, now suffering from mild depression, attempted to spend more time with his family. Although he would take files home to work on after the children went to bed, he found he did not have the energy to tackle these matters and the files would just sit there, untouched.

Rylaarsdam's marital situation deteriorated in 1997 and he and his wife eventually divorced in October 2000. Rylaarsdam's mental state followed suit. By April 1999, he was diagnosed with severe depression. He began seeing a psychiatrist and a counselor and was put on medication for his condition. To his credit he recognized that he could not function as a lawyer, and he quit his position with the county attorney and has not practiced since August 1999. Shortly after his resignation, he was hospitalized for a week for treatment of his depression. Since that time he has continued counseling and a medication regimen prescribed by his psychiatrist.

The Commission decided that Rylaarsdam had violated DR 6–101(A)(3), which states that "[a] lawyer shall not ... [n]e-glect a client's legal matter." It also concluded that Rylaarsdam's deceit and misrepresentations constituted a violation of DR 1–102(A)(4), (5), and (6). *See* Iowa Code of Prof'l Responsibility for Lawyers DR 1–102(A)(4) (prohibiting "conduct involving dishonesty, fraud, deceit, or misrepresentation"), (5) (prohibiting "conduct that is prejudicial to the administration of justice"), (6) (prohibiting "any other conduct that adversely reflects on the fitness to practice law"). Finally, the Commission stated that the respondent's failure to respond to the Board's inquiries was a violation of DR 1–102(A)(5) and (6).

In recommending a six-month suspension, the Commission offered the following evaluation of Rylaarsdam's conduct:

> The Grievance Commission is seriously concerned about the Respondent's acts of deceit, particularly those involving falsification of court documents and forgery of an official's signature. The Commission is likewise concerned about the Respondent's failure to seek help in an area of the law in which he had no expertise. However, the Commission understands the pressures the Respondent was under and recognizes the role which Respondent's marital problems and, more importantly, his mental health condition played with respect to his behavior.

The Commission also stated that it "was impressed with Respondent's sincerity, his remorse, [and] his acceptance of responsibility for all his actions with no attempt to blame others."

The Commission's report is now before this court for review pursuant to Court Rule 118.10. Our review is de novo. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mulford*, 625 N.W.2d 672, 679 (Iowa 2001). "Although we are not bound by the Commission's findings, we give them weight, particularly when consider-

ing the credibility of witnesses." *Id.* Similarly, although we are not bound by the Commission's recommended discipline, we give its recommendation our respectful consideration. *Id.*

## II. *Ethical Violations.*

■ As we have already noted, Rylaarsdam did not contest the nature of his conduct nor the fact that it violated our code of professional responsibility. We agree with the conclusions of the Commission that the respondent's neglect of his clients' legal matters, his deceit, his misrepresentations, and his failure to respond to the Board constituted violations of the Code provisions listed above. We turn now to consideration of the appropriate discipline.

## III. *Discipline.*

■ In determining suitable discipline, we consider " 'the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the [bar] as a whole, and the respondent's fitness to continue in the practice of law.' " *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Freeman,* 603 N.W.2d 600, 603 (Iowa 1999) (quoting *Comm. on Prof'l Ethics & Conduct v. Havercamp,* 442 N.W.2d 67, 69 (Iowa 1989)). We also take into account "both aggravating and mitigating circumstances." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mears,* 569 N.W.2d 132, 134 (Iowa 1997).

We have recently considered a disciplinary case that bears some resemblance to the case before us. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel,* 634 N.W.2d 652 (Iowa 2001). In the *Hohenadel* case, we reviewed a matter involving an attorney, Randy Hohenadel, who had neglected his clients' legal matters and then lied to his clients and the

court to cover up his misconduct. 634 N.W.2d at 653–54. This conduct was aggravated by the fact that Hohenadel had been previously reprimanded for a similar ethical violation and by the fact that his current misconduct resulted in harm to his clients. *Id.* at 656. On the other hand, Hohenadel's wrongdoing appeared to be a consequence of his alcoholism, a condition that he ultimately acknowledged and for which he sought treatment. *Id.* at 656–57. We suspended Hohenadel's license indefinitely with no possibility of reinstatement for three months. *Id.* at 657.

■ Although the present case bears striking similarities to the *Hohenadel* matter, the ethical violations committed by Rylaarsdam are even more serious. Rylaarsdam's misconduct went beyond lying to his clients; he actually forged his clients' signatures and, in an even more calculated and unscrupulous attempt to hide his neglect, falsified a court document. *See generally Comm. on Prof'l Ethics & Conduct v. Bauerle,* 460 N.W.2d 452, 453 (Iowa 1990) ("Fundamental honesty is the base line and mandatory requirement to serve in the legal profession."). We think this conduct warrants a more severe sanction than that imposed in the *Hohenadel* case, despite the fact Rylaarsdam has no prior disciplinary record.

In view of the pertinent factors and the aggravating and mitigating circumstances, we concur in the recommendation of the Commission that a six-month suspension is appropriate. Therefore, we suspend Rylaarsdam's license to practice law indefinitely with no possibility of reinstatement for six months. This suspension applies to all facets of the practice of law. Ct. R. 118.12.

Upon any application for reinstatement, Rylaarsdam must establish that he has not practiced law during the suspension period and that he has in all other ways complied with the requirements of Court Rule

118.18. In addition, Rylaarsdam's application for reinstatement must be accompanied by an affidavit from a licensed mental health professional stating that Rylaarsdam is mentally and emotionally competent to practice law. Costs of this action shall be taxed to the respondent pursuant to Court Rule 118.22.

**LICENSE SUSPENDED.**