**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Richard S. KALLSEN, Respondent.**

No. 03–0935.

Supreme Court of Iowa.

Oct. 8, 2003.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Richard Kallsen, pro se, for respondent.

TERNUS, Justice.

This disciplinary proceeding stems from the desire of the respondent, Richard Kallsen, to change professions and from his failure to attend to two clients in the process of closing his practice. These clients, Melissa Farrell and Timothy Deplanty, claim the respondent neglected legal matters he undertook on their behalf and failed to account for attorney fees paid in advance by both clients. We find the respondent has violated the Iowa Code of Professional Responsibility for Lawyers and, as a consequence, we suspend his license to practice law indefinitely with no possibility of reinstatement for three months.

### I. *Background Facts and Proceedings.*

For several years prior to the events giving rise to this matter, Kallsen practiced law in Sioux City, Iowa. Unhappy with the practice of law, the respondent decided in 2000 to return to college to obtain his teaching certificate and, thereafter, to teach high school students. Pursuant to this plan, the respondent closed his law office on September 1, 2000. With two exceptions, Kallsen completed his clients' work or referred them to other attorneys for further representation. The two exceptions were Melissa Farrell and Tim Deplanty.

Farrell had hired the respondent to pursue modification of a dissolution decree. Deplanty's stepfather had employed the respondent to defend Deplanty on criminal charges. Both Farrell and Deplanty were unhappy with the representation they re-

ceived from the respondent, claiming that Kallsen closed his office without completing the work he had been retained to do on their behalf. These clients were equally disappointed that the respondent did not return some portion of the advance fees that had been paid to Kallsen when he was hired to represent them.

Farrell's and Deplanty's dissatisfaction with the respondent's conduct resulted in the filing of two complaints with the Board. After receiving several notices from the Board concerning Farrell's complaint, the respondent wrote a letter to the Board explaining his handling of Farrell's modification action. After unsuccessfully attempting to obtain Kallsen's response to the Deplanty complaint, the Board filed a formal complaint concerning both matters with the Iowa Supreme Court Grievance Commission on October 2, 2002. The respondent did not answer the complaint, nor did he file a response to the Board's request for admissions and request for production of documents.

After the Commission chair sustained the Board's motion to compel discovery, the respondent faxed a letter to the Board on December 27, 2002, apologizing for the delay in his response and stating that he admitted the fifteen requests for admissions served by the Board.[1] In response to the request for production, Kallsen stat-

ed he had no documents in addition to those the Board already possessed. The respondent also replied to the allegations made by his former clients, describing his efforts on their behalf. He further informed the Commission that he had no desire to appear at the hearing and argue with Farrell and Deplanty about what had happened. For that reason, the respondent told the Board he did not plan to attend the hearing or to present any evidence other than his letters to the Board.

On January 3, 2003, an evidentiary hearing was held before the Commission; Kallsen did not attend. The Board did, however, introduce the respondent's letters into evidence, as well as the complete court files in the Farrell modification matter and in the Deplanty criminal case. In addition, Deplanty and his stepfather, Randy Frady, testified.

Subsequently, the Commission issued its report, concluding the respondent had violated the Iowa Code of Professional Responsibility for Lawyers by neglecting his clients' legal matters. *See* Iowa Code of Prof'l Responsibility for Lawyers DR 6–101(A)(3) (providing lawyer shall not neglect a client's legal matter), DR 7–101(A) (providing lawyer shall not intentionally fail to carry out a contract of employment or prejudice a client in the course of representation). The Commission also conclud-

---

1. The matters admitted by the respondent focused on his failure to respond to the Board rather than on the charges made by his former clients. The admissions included the following facts: (1) the respondent was served on March 28, 2001, with the complaint concerning Melissa Farrell, but did not file an answer; (2) the respondent received a second notice of the complaint on April 20, 2001, but did not respond within ten days as requested in the notice; (3) the respondent received a subsequent letter from the Board, dated May 9, 2001, informing him of the consequences of failing to respond and asking for an immediate response; (4) the respondent did not respond to the Board until late June or early July 2001; (5) Randy Frady filed a complaint against the respondent on March 1, 2002, concerning the respondent's representation of Frady's stepson, Tim Deplanty; (6) the respondent received this complaint from the Board on March 19, 2002, but did not respond; (7) a second notice of complaint was mailed to the respondent, but was not claimed; and (8) the respondent received a letter from the Board dated May 3, 2002, advising him that his failure to respond was an ethical violation, but he still failed to respond.

ed the respondent's failure to render an adequate accounting to his clients and to remit any unearned fees violated the canons of ethics. *See id.* DR 9–102(B)(3), (4) (requiring lawyers to render appropriate accounting to clients and to promptly pay any fees in lawyer's possession to which client is entitled). Finally, the Commission concluded the code of professional responsibility had been violated by Kallsen's failure to respond to notices and inquiries from the Board. *See id.* DR 1–102(A)(5), (6) (stating lawyer shall not engage in conduct prejudicial to the administration of justice or reflecting adversely on fitness to practice law). The Commission recommended the respondent's license to practice law be suspended with no possibility of reinstatement for nine months.

## II. *Principles Governing Our Consideration of This Disciplinary Matter.*

■ This proceeding comes to the court for review of the Commission's report and for final disposition. *See* Iowa Ct. Rs. 35.9, .10(1). Our review is de novo. *See* Iowa Ct. R. 35.10(1). Accordingly, although we give weight to the factual findings made by the Commission, particularly when they involve an assessment of witness credibility, this court finds the facts anew. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mulford,* 625 N.W.2d 672, 679 (Iowa 2001). In determining the facts, we keep in mind that the Board bears the burden to prove the alleged ethical violations by a convincing preponderance of the evidence. *See id.*

■ It is the obligation of this court to determine the appropriate discipline. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams,* 623 N.W.2d 815, 818 (Iowa 2001); Iowa Ct. R. 35.10. Nevertheless, we give respectful consideration to the Commission's recommended discipline

in making our decision. *Adams,* 623 N.W.2d at 818. To establish a suitable sanction, we consider the nature and extent of the respondent's ethical infractions, his fitness to continue practicing law, our obligation to protect the public from further harm by the respondent, the need to deter other attorneys from engaging in similar misconduct, our desire to maintain the reputation of the bar as a whole, and any aggravating or mitigating circumstances. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Rylaarsdam,* 636 N.W.2d 90, 93 (Iowa 2001).

## III. *Factual Findings.*

■ A. *Melissa Farrell complaint.* In April 2000, Farrell employed the respondent to seek a modification of her dissolution decree, paying an advance fee of $2000. Shortly thereafter, the respondent filed an application for modification. Subsequently, Kallsen, Farrell, Farrell's former spouse, and his attorney met to work out a settlement. Eventually, Farrell and her ex-husband met alone and agreed to the terms of a stipulation. Farrell brought her notes to the respondent's office and his secretary typed the stipulation and an order for the court's signature.

What happened next is unclear. Farrell asserts the final draft of the stipulation and order were never provided to her. The respondent claims he understood his involvement to be at an end, as Farrell and her former spouse had decided to complete the modification themselves to save on attorney fees. Suffice it to say, the stipulation and order were never presented to the court and on January 3, 2002, Farrell's application to modify was dismissed for failure to prosecute.

In December 2000, Farrell complained to the Woodbury County Bar Association. She said she had been unable to reach the respondent, as his office was closed and his

work number had been disconnected. She also asserted the respondent had not returned her phone calls to his residence. In addition to her frustration at Kallsen's inattention to completion of the modification, Farrell also complained about his failure to account for the $2000 retainer she had paid.

When the local bar told Kallsen of Farrell's concerns, the respondent attempted unsuccessfully to contact her. He subsequently informed the bar of these efforts and asserted he had sent Farrell an itemized statement in September 2000. The respondent later told the Board that after he closed his office, his computer crashed, causing him to lose his only copy of the statement he had prepared. Recreating this statement, he asserted, would require a review of his daily time logs, a task the respondent had not undertaken. There is no dispute Kallsen has not returned any portion of the $2000 paid by Farrell.

B. *Timothy Deplanty complaint.* In June 2000 Randy Frady hired the respondent to defend Frady's stepson against a charge of operating a motor vehicle while under the influence of marijuana, first-offense, and a possession-of-marijuana charge. Although Deplanty planned to plead guilty, he hoped an attorney could minimize any sentence he received. Frady paid the respondent a $750 advance fee to represent Deplanty.

It is uncontroverted that on February 8, 2001, a bench warrant was issued and Deplanty's bond forfeited after he failed to appear for a scheduled court appearance on January 29, 2001. Deplanty was eventually arrested on the outstanding warrant on December 19, 2001. Shortly thereafter his stepfather hired another attorney, Robert Tiefenthaler, to represent Deplanty. On May 2, 2002, Deplanty pled guilty to the charges and was given a deferred sentence. Tiefenthaler was also successful in having the bond forfeiture set aside. Frady paid Tiefenthaler $1000 for his services.

Frady and Deplanty, the Board's only witnesses, testified concerning the details of their communications with the respondent and the respondent's representation of Deplanty. This testimony was somewhat at variance with Kallsen's letter to the Board and with the court file in the criminal case. Before reconciling these discrepancies, we briefly review the conflicting evidence.

Frady said that from time to time Deplanty received notices of court hearings and Frady would then call the respondent to ask whether Deplanty needed to appear in court. According to Frady, the respondent always told him that Deplanty's personal appearance was not necessary because the respondent could handle the various court hearings on Deplanty's behalf. Despite these alleged assurances, Frady testified, Deplanty was taken into police custody on an arrest warrant issued for his failure to appear at a hearing in his criminal case. Frady attributed Deplanty's arrest to the respondent's neglect of Deplanty's case.

Frady also testified that Kallsen never met with Deplanty and never informed them that he was withdrawing from the case. In addition, the respondent did not account to Frady for the $750 paid to the respondent, nor was any portion of these funds returned to Frady.

Deplanty testified similarly. He said he never met the respondent, but did talk to him on several occasions. Although Deplanty was not definite with respect to exactly what papers he received from the clerk's office and from the respondent, he acknowledged that he received notice of the various court hearings. He claimed, however, that each time, with one excep-

tion, Kallsen told him he did not need to appear. On the one occasion that Deplanty did come to court, he learned from court personnel that the matter had been rescheduled due to a problem with the judge's schedule. Deplanty said he then went to the respondent's office, but Kallsen was not there.

Deplanty confirmed that he was arrested on an outstanding warrant due to his failure to appear at a hearing scheduled in his criminal case. He said there was never a time when he was told to be present that he intentionally failed to appear. He also testified that Kallsen did not tell him that he—the respondent—was closing his office and would no longer be representing Deplanty.

In the respondent's December 2002 letter to the Board, he paints a different picture of these events. He claimed Frady made several promises to have Deplanty present, both before and after the respondent closed his office, but Deplanty never showed up for court hearings and the respondent never met him. Conceding that it was likely a breach of his duty to Deplanty, Kallsen stated he "quit trying" because he felt Deplanty "no longer was interested in solving the matter" and had "simply used [the respondent] to get a warrant lifted."

The court file lends support to the respondent's version of what occurred. The file shows a bench warrant was first issued on December 6, 2000, based on Deplanty's failure to appear on December 1, 2000 for a scheduled hearing for "plea taking and sentencing." Three days later, the record shows, defense counsel (apparently Kallsen) appeared, had the warrant recalled, and participated in scheduling a status hearing for December 15, 2000. At the December 15 hearing, defense counsel entered a not guilty plea on behalf of the defendant and trial was set for January 29,

2001. This hearing appears to be the last record of any involvement by the respondent.

Although the court file does not show any withdrawal by Kallsen, on January 17, 2001, the public defender filed a motion for continuance on behalf of Deplanty. It appears no ruling was entered on this motion and on February 8, 2001, the bench warrant was issued for Deplanty's failure to appear at the trial scheduled for January 29, 2001. It was this warrant that provided the basis for Deplanty's arrest in December 2001.

We find from the evidence before us that the respondent should be held accountable for issuance of the first bench warrant. Although Deplanty's failure to appear for two court appearances while represented by two different attorneys shows a pattern of neglect on his part that supports a conclusion Deplanty's absence on December 1, 2000, was his own fault, this fact does not excuse Kallsen's failure to be present at the scheduled hearing that day. We also find, however, that there was no harm to Deplanty caused by this failure as the respondent successfully obtained a recall of the warrant issued as a result of Deplanty's failure to appear at the December 1, 2000, hearing.

We do not think the Board has shown by a convincing preponderance of the evidence that the issuance of the second warrant and Deplanty's subsequent arrest and placement in the county jail resulted from any breach of duty by the respondent. To the contrary, it appears that Deplanty was represented by a public defender when these events occurred.

IV. *Ethical Violations.*

A. *Neglect.* Based on these factual findings, we agree with the Commission that the respondent has violated

our rules of professional responsibility. Until Kallsen notified his clients that he would no longer be representing them and withdrew as their attorney of record, or until his clients retained other representation, he had an ethical duty to protect their interests in the matters for which he was employed. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Rauch,* 650 N.W.2d 574, 576 (Iowa 2002); *Comm. on Prof'l Ethics & Conduct v. Kelly,* 357 N.W.2d 315, 319 (Iowa 1984). Thus, although the respondent may have reasonably understood that Farrell and her former spouse preferred to minimize the involvement of their attorneys in the resolution of their modification dispute, it was incumbent upon the respondent to ensure the parties' stipulation was presented to the court and an order entered prior to a dismissal of the modification action. Similarly, even if we accept the respondent's version of his dealings with Deplanty, difficulties in obtaining a client's cooperation and presence cannot excuse the attorney's failure to appear at a court hearing. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Pracht,* 656 N.W.2d 123, 126 (Iowa 2003); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sherman,* 637 N.W.2d 183, 187–88 (Iowa 2001). We conclude, therefore, that Kallsen has violated DR 6–101(A)(3) and DR 7–101(A). *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo,* 652 N.W.2d 213, 215 (Iowa 2002); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel,* 634 N.W.2d 652, 654–55 (Iowa 2001).

■ B. *Accounting.* Disciplinary Rule 9–102(B) requires a lawyer to "render appropriate accounts to the client" and to "[p]romptly pay . . . to the client as requested by a client the funds . . . in the possession of the lawyer which the client is entitled to receive." Iowa Code of Prof'l Responsibility for Lawyers DR 9–102(B)(3), (4). This rule was violated when the respondent failed (1) to render an accounting to his clients showing the work he did on their behalf and the extent to which he earned the funds paid to him, and (2) to pay to them any unearned fees. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Feeney,* 657 N.W.2d 454, 457 (Iowa 2003); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ramey,* 639 N.W.2d 243, 245 (Iowa 2002).

■ C. *Failure to cooperate.* As we reviewed above, the Board served various notices on the respondent with respect to Farrell's and Deplanty's complaints, and also served a request for admissions and request for production on the respondent during the course of the present grievance proceeding. Although Kallsen eventually responded to these notices and requests, his responses were seriously tardy. The respondent's failure to cooperate with the Board's investigation and prosecution of these complaints is a violation of DR 1–102(A)(5) and (6). *See D'Angelo,* 652 N.W.2d at 215; *Rylaarsdam,* 636 N.W.2d at 92–93. We turn now to a discussion of the appropriate discipline.

V. *Discipline.*

■ The Commission has recommended an indefinite suspension with no possibility of reinstatement for nine months. While we agree that the respondent's license should be suspended, we think a more appropriate sanction would permit reinstatement after three months.

Kallsen's ethical violations are serious matters and warrant a suspension for some period of time in view of the dismissal entered in the Farrell modification action. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett,* 653 N.W.2d 377, 381 (Iowa 2002) (noting harm to client is an aggravating factor). On the other hand, we have found the extent of the respondent's neglect and the consequences

of that misconduct to be somewhat less pervasive than did the Commission, which was "particularly bothered" by the Deplanty situation. As noted earlier, we think Kallsen is responsible only for issuance of the first bench warrant, which he had recalled before Deplanty was arrested, and not for issuance of the second warrant on which Deplanty was eventually taken into custody.

In addition, we do not think the other considerations affecting the determination of an appropriate sanction call for an extended suspension. Because the respondent is no longer engaged in the practice of law, the need to protect the public from further harm is minimal in this case. For the same reason, we need not be overly concerned with Kallsen's fitness to continue practicing law. (Nonetheless, we note there was no evidence in the record that the actions leading to this disciplinary action were chronic in nature.) Finally, we think a three-month suspension will adequately deter other attorneys from engaging in similar misconduct and will maintain the reputation of the bar as a whole. Although the respondent's license is currently suspended for his failure to file required reports with the Commission on Continuing Legal Education and the Client Security Commission, this failure is due to the respondent's decision to leave the practice of law for a teaching position and his disinterest in maintaining his license to practice law. Under these circumstances, we do not deem his current suspension to be a particularly aggravating factor.

## VI. *Conclusion.*

We indefinitely suspend the license of Richard S. Kallsen to practice law in Iowa, with no possible reinstatement for three months from the date this opinion is filed. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12(3).

Upon any application for reinstatement, Kallsen must establish that he has not practiced law during the suspension period and that he has in all other ways complied with the requirements of Iowa Court Rule 35.21. In addition, as a condition of reinstatement, Kallsen must confirm that he has accounted to Farrell and Deplanty for the advance fees paid to him and that he has refunded any unearned fees.

The costs of this proceeding are taxed to the respondent. *See* Iowa Ct. R. 35.25(1).

**LICENSE SUSPENDED.**